FILED
2021 Oct-15 AM 11:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SONDRA RAY, as the personal representative of the estate of her son, Steven Davis,<br><br>    Plaintiff<br><br>v.<br>RODERICK GADSON;<br>STEVEN D. HARRISON;<br>CLIFFORD O'NEAL;<br>WILSON B. CLEMONS;<br>ROBERT WILLIAMS;<br>GLENN TEAGUE;<br>CHRISTOPHER GORDY;<br>GWENDOLYN GIVENS;<br>KENNETH PETERS;<br>SHANNON CALDWELL;<br>DEAUNDRA JOHNSON;<br>MOHAMMAD JENKINS;<br>EDWARD ELLINGTON;<br>TERRY LOGGINS;<br>F.S. SIDES;<br>ARNALDO MERCADO; and<br>JEFFERSON DUNN,<br><br>    Defendants. | CASE NO. 2:20-CV-499-RDP |

**FIRST AMENDED COMPLAINT**

Plaintiff complains of defendants, stating as follows:

**Nature of the Action**

1. This is a civil action brought by plaintiff, as the personal representative of the estate of her son, Steven Davis, against ADOC correctional officers who

brutally beat Davis, killing him, and against ADOC supervisory personnel who established and/or maintained the ADOC administrative machinery that permitted and encouraged such violence, in violation of Davis' constitutional right, guaranteed by the Eighth Amendment, not to be subjected to excessive force.

**Jurisdiction and Venue**

2. This action arises under the Fourth and Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983. The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

3. This judicial district is an appropriate venue under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the suit happened in this judicial district.

**Parties**

4. Sondra Ray is of legal age and a citizen and resident of the state of Alabama. She is the duly appointed representative of the estate of her son, Steven Davis.

5. Defendant Roderick Gadson was a correctional officer at Donaldson Correctional Facility in Bessemer, Alabama at all relevant times.

6. Defendant Steven D. Harrison was a correctional officer at Donaldson Correctional Facility in Bessemer, Alabama at all relevant times.

7. Defendant Clifford O'Neal was a correctional officer at Donaldson

Correctional Facility in Bessemer, Alabama at all relevant times.

8. Defendant Wilson B. Clemons was a correctional officer at Donaldson Correctional Facility in Bessemer, Alabama at all relevant times.

9. Defendant Robert Williams was a correctional officer at Donaldson Correctional Facility in Bessemer, Alabama at all relevant times.

10. Defendant Glenn Teague was a correctional officer at Donaldson Correctional Facility in Bessemer, Alabama at all relevant times.

11. Defendant Christopher Gordy was the head warden for Donaldson Correctional Facility in Bessemer, Alabama until shortly before the death of Steven Davis.

12. Defendant Gwendolyn Givens was the head warden for Donaldson Correctional Facility in Bessemer, Alabama at all relevant times. Previously, she served as an assistant warden at the facility.

13. Defendant Kenneth Peters was an assistant warden for Donaldson Correctional Facility in Bessemer, Alabama at all relevant times.

14. Defendant Shannon Caldwell was a captain at Donaldson Correctional Facility in Bessemer, Alabama at all relevant times.

15. Defendant Deaundra Johnson was a captain at Donaldson Correctional Facility in Bessemer, Alabama at all relevant times.

16. Defendant Mohammad Jenkins was a lieutenant at Donaldson

Correctional Facility in Bessemer, Alabama at all relevant times.

17. For years prior to October 2019, defendants Caldwell, Johnson, and Jenkins were largely responsible for use of force investigations at Donaldson.

18. Defendant Edward Ellington was the regional coordinator (or equivalent title) with supervisory authority over correctional facilities in the northern region, which included Donaldson, at all relevant times.

19. Collectively, defendants Gordy, Givens, Peters, Caldwell, Johnson, Jenkins, and Ellington are referred to as the "Donaldson supervisory defendants."

20. Defendant Terry Loggins was the Investigations and Intelligence Division (I&I)[1] supervisor over investigations in the northern region, which included Donaldson, at all relevant times.

21. Defendant F.S. Sides was the assistant director of I&I at all relevant times.

22. Defendant Arnaldo Mercado was the director of I&I at all relevant times.

23. Collectively, Loggins, Sides, and Mercado are referred to as the "I&I supervisory defendants."

24. Jefferson Dunn is the Commissioner of ADOC.

25. All defendants are sued in their individual capacities only.

---

[1] Since this incident occurred the I&I Division has been renamed the Law Enforcement Services Division.

# Facts

## Donaldson Officers Beat Davis in the Head with a Baton, Killing HIm

26. On or about October 4, 2019, Davis was an inmate at Donaldson Correctional Facility in Bessemer, Alabama.

27. Davis had recently been transferred to Donaldson.

28. Davis was housed in a behavioral modification dorm, apparently due to issues he had at another prison facility.

29. One of the inmates in the cell next to Davis taunted Davis regarding sexual matters.

30. The taunting escalated over the course of a couple of days.

31. Davis obtained plastic shanks to deal with the inmate who was taunting him.

32. On October 4, 2019, when inmates in Davis' unit were being taken out for exercise, Davis went after the inmate who had been taunting him.

33. Davis never attempted to assault an officer.

34. The officers present, including defendants Gadson, Harrison, O'Neal, Clemons, Williams, and Teague, intervened.

35. Davis immediately dropped the shanks and submitted to the officers.

36. The officers nevertheless assaulted Davis.

37. The officers stomped Davis' head.

38. At least one of the officers used a baton on Davis' head.

39. Each of the officers used excessive force on Davis or failed to intervene, despite an opportunity to do so, to prevent other officers from using excessive force.

40. Davis died as a result of blows to his head.

41. The blows to Davis' head are considered deadly force and would have been excessive even if Davis was resisting the officers.

42. The medical records state that Davis arrived at UAB "as a level I trauma [patient] via air following an assault in jail in which he was struck mainly in the face/head."

43. Head and maxiofacial CT scans showed multiple fractures and related bruising and bleeding.

**The Coverup**

44. Because Davis was killed, I&I, the ADOC division responsible for investigating serious allegations of misconduct by ADOC officers, was contacted.

45. The supervisor for the I&I region that included Donaldson, defendant Loggins, and defendants Sides and Mercado, as a matter of routine, were informed of the death.

46. These defendants, with the knowledge and cooperation of the Donaldson supervisory defendants, took steps to cover up the murder and exonerate the involved officers.

47. Rather than insuring that the murder was properly investigated so that the officers involved could be held accountable in criminal court, the Donaldson supervisory defendants and the I&I supervisory defendants took steps to insure that the incident was documented in a manner that exonerated the officers.

48. These steps included, but were not limited to, assisting the involved officers in coordinating their stories; forcing inmates to provide statements supporting the coordinated story; and refusing to obtain statements from inmates that were incriminating.

49. That the incident was being covered up and not investigated with even minimal effort will be obvious from even a cursory review of the investigative report.

50. That report was reviewed and approved by defendants Loggins, Sides, and Mercado.

51. As a result of the coverup, no officer was disciplined, let alone criminally charged.

### There Is a Pattern of Excessive Force, for Which Officers Are Not Held Accountable, at Donaldson and Throughout ADOC

52. The beating death of Steven Davis is not an isolated incident. It is part of a pattern of excessive force without accountability, as the U.S. Department of Justice concluded following an investigation of Alabama's prisons for men:

> There is reasonable cause to believe that the correctional officers within the Alabama Department of Corrections ("ADOC") frequently use

excessive force on prisoners housed throughout Alabama's prisons for men. Such violations are pursuant to a pattern or practice of resistance to the full enjoyment of rights secured by the Eighth Amendment. We identified frequent uses of excessive force in 12 of the 13 Alabama prisons that we reviewed. Given the identified pervasiveness of the uses of excessive force and the statewide application of ADOC's use of force policies and procedures, we have reasonable cause to believe that the uses of excessive force occurring within Alabama's prisons give rise to systemic unconstitutional conditions.

[July 23, 2020 U.S. Department of Justice Excessive Force Investigative Report (DOJ Report) at 1 (footnote omitted)] One of the 12 is Donaldson. *Id.* at nn.1&2.

53. The report explains that "inadequate supervision and the failure to hold officers accountable for their behavior contribute to an increase in the incidence of excessive force." [DOJ Report at 2]

54. As with Steven Davis, "[t]hese uses of excessive force–which include the use of batons, chemical spray, and physical altercations such as kicking–often result in serious injuries and, sometimes, death," [DOJ Report at 2]

55. A number of incidents have resulted in ADOC officers pleading guilty and going to prison, including one in which "at least four officers beat a prisoner to death." [DOJ Report at 6]

56. The DOJ explained that excessive force at ADOC prisons is common:

In 2017, ADOC's incident reporting system documented 1,800 uses of force. A reported use of force incident does not equate to a use of excessive force. Indeed, many uses of force in a prison setting may be justified. However, the Department's review of a statistically significant set of ADOC's use of force incident reports and accompanying

8

documentation from a six-month period demonstrated that a large number of reported uses of force were unjustified under the legal standard.

[DOJ Report at 6]

57. The pattern of excessive force at ADOC prisons includes clearly unconstitutional force on inmates who were restrained or compliant, [DOJ Report at 10], and force used as punishment, [DOJ Report at 14].

58. These excessive uses of force are initially reviewed by personnel at the institution.

59. According to the DOJ, however, incidents that result in serious injuries often go entirely uninvestigated by the institution. [DOJ Report at 9]

60. This was the case at Donaldson and at the other facilities in the northern ADOC region.

61. The Donaldson supervisory defendants were responsible for creating and maintaining a culture of violence without accountability at Donaldson and more generally in the northern region.

62. DOJ's review of ADOC records showed that the problem was not only with the institution-level investigations but also with I&I investigations. [DOJ Report at 19]

63. The DOJ report details how the division responsible for investigating serious incidents of officer misconduct, I&I, routinely conducts inadequate

9

investigations. [DOJ Report at 20-21]

64. DOJ explained that '[t]he failure to rigorously and properly investigate uses of force fosters an environment where the use of excessive force is not addressed." [DOJ Report at 19]

65. The I&I defendants are responsible for investigating serious use of force incidents and are directly responsible for the culture and environment that tolerates excessive force at Donaldson and elsewhere.

66. Defendant Dunn has had supervisory responsibility over ADOC since 2015, has been aware of these systemic deficiencies, and has failed and refused to act to correct them.

67. The individual defendants acted with malice and/or with reckless indifference to Davis' constitutional rights.

## Count I - 42 U.S.C. § 1983 - Excessive Force

68. On or about October 4, 2019, the individual correctional officer defendants, acting under color of law within the meaning of 42 U.S.C. § 1983, assaulted and battered Davis without justification, ultimately causing his death. These individual defendants did thereby deprive Davis of his rights under the Eighth Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983. Specifically, they violated Davis' right to be free from excessive force.

69. Acting with deliberate indifference, the Donaldson supervisory

defendants, the I&I supervisory defendants, and defendant Dunn encouraged excessive force by failing to investigate and hold accountable officers engaging in excessive force and by failing and refusing to act to correct systemic issues related thereto.

70. As a result of the conduct of defendants, Davis died.

**Other Matters**

71. All conditions precedent to the bringing of this suit have occurred.

**Relief Sought**

72. As relief, plaintiff seeks the following:

   a. That plaintiff be awarded such compensatory damages as a jury shall determine from the evidence plaintiff is entitled to recover;

   b. That plaintiff be awarded against the individual defendants such punitive damages as a jury shall determine from the evidence plaintiff is entitled to recover;

   c. That plaintiff be awarded prejudgment and postjudgment interest at the highest rates allowed by law;

   d. That plaintiff be awarded the costs of this action, reasonable attorney's fees, and reasonable expert witness fees;

   e. That plaintiff be awarded appropriate declaratory and injunctive relief; and

   f. That plaintiff be awarded such other and further relief to which plaintiff is justly entitled.

**Dated September 16, 2021.**

Respectfully submitted,

s/ Henry F. (Hank) Sherrod III
Henry F. (Hank) Sherrod III
No. ASB-1200-D63H
HENRY F. SHERROD III, P.C.
119 South Court Street
Florence, Alabama 35630
Phone: 256-764-4141
Fax: 877-684-0802
Email: hank@alcivilrights.com

Attorney for Plaintiff

**Jury Demand**

Plaintiff requests a trial by jury.

s/ Henry F. (Hank) Sherrod III
Henry F. (Hank) Sherrod III