UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SONDRA RAY, | } |
| | } |
|     Plaintiff, | } |
| | } |
| v. | }  Case No.: 2:20-cv-00499-RDP |
| | } |
| RODERICK GADSON, et al., | } |
| | } |
|     Defendants. | } |

### MEMORANDUM OPINION

This case is before the court on the seven motions to dismiss filed by various Defendants. (Docs. # 95; 97; 99; 100; 102; 104; 114). For the reasons discussed below, the motions are due to be granted in part and denied in part.

### BACKGROUND

Steven Davis was an inmate at Donaldson Correctional Facility who died after correctional officers struck him repeatedly in the face and head during an altercation at the facility on October 4, 2019. (Doc. # 60 ¶¶ 26-43). His mother, Plaintiff Sondra Ray, brings this action under 42 U.S.C. § 1983 on behalf of her son's estate. (*Id.* ¶ 1). She claims that the officers personally involved in the altercation violated the Eighth Amendment by using excessive force against her son, and supervisory officials who permitted and encouraged the use of excessive force against Donaldson inmates are also liable for the incident, too. (*Id.*).

On October 4, 2019, when inmates at Donaldson Correctional Facility were going outside for exercise, Steven Davis initiated a physical altercation with another inmate who had been taunting him for several days. (*Id.* ¶ 32). Davis attempted to use plastic "shanks" to attack the other inmate. (*Id.* ¶¶ 31-32). Several officers were present, and they intervened to stop the fight. (*Id.* ¶¶

34). Those officers are Defendants Roderick Gadson, Steven D. Harrison, Clifford O'Neal, Wilson B. Clemons, Robert Williams, and Glenn Teague (the "Officer Defendants"). (*Id.*)

After the Officer Defendants intervened, Davis immediately dropped the shanks and submitted to the officers. (*Id.* ¶ 35). Davis made no attempt to assault an officer at any time. (*Id.* ¶ 33). Nonetheless, the Officer Defendants continued to use force against Davis; they each "stomped" his head, and at least one officer struck Davis on the head with a baton. (*Id.* ¶¶ 27-38). None of the Officer Defendants intervened to stop the further use of force against Davis. (*Id.* ¶ 39).

Davis was subsequently airlifted to UAB Hospital where, according to medical records, he arrived "as a level I trauma [patient] via air following an assault in jail in which he was struck mainly in the face/head." (*Id.* ¶ 42). Head and maxillofacial CT scans showed multiple fractures and related bruising and bleeding. (*Id.* ¶ 43). Steven Davis ultimately died as a result of the blows to his head. (*Id.* ¶ 40).

According to Plaintiff, Steven Davis's death is not an isolated incident. (*Id.* ¶ 52). Pointing to a Department of Justice Investigative Report released on July 23, 2020 (the "DOJ report"), Plaintiff claims that Davis's death was "part of a pattern of excessive force without accountability" in Alabama's prisons. (*Id.*).

Plaintiff alleges that "correctional officers within the Alabama Department of Corrections ('ADOC') frequently use excessive force on prisoners housed throughout Alabama's prisons for men," including Donaldson. (*Id.*) (quoting the DOJ Report). These uses of force "include the use of batons, chemical spray, and physical altercations such as kicking" and "often result in serious injuries and, sometimes, death." (*Id.* ¶ 54). The DOJ Report noted that "the Department's review of a statistically significant set of ADOC's use of force incident reports and accompanying documentation from a six-month period demonstrated that a large number of reported uses of force [in 2017] were unjustified under the legal standard." (*Id.* ¶ 56).

At Donaldson, incidents involving the use of force "are initially reviewed by personnel at the institution." (*Id.* ¶ 58). However, Plaintiff contends that confrontations resulting in serious injuries "often go entirely uninvestigated by the institution." (*Id.* ¶¶ 58-59) (citing the DOJ Report).

At the ADOC level, the Investigations and Intelligence Division[1] ("I&I") is responsible for investigating serious allegations of misconduct by ADOC officers. (*Id.* ¶ 63). But, Plaintiff claims, I&I routinely conducts inadequate investigations. (*Id.*). According to the DOJ Report, the "failure to rigorously and properly investigate uses of force fosters an environment where the use of excessive force is not addressed." (*Id.* ¶ 64).

Plaintiff argues that certain supervisory officials at both Donaldson and the ADOC are responsible for the prevalence of excessive force in Alabama prisons because "inadequate supervision and the failure to hold officers accountable for their behavior contribute to an increase in the incidence of excessive force." (*Id.* ¶ 53) (quoting the DOJ Report). She brings claims against three categories of Supervisor Defendants (who are identified more fully below): (1) the "Donaldson supervisory defendants"; (2) the "I&I supervisory defendants"; and (2) ADOC Commissioner Jefferson Dunn. (*Id.* ¶¶ 11-24).

First, Plaintiff alleges that "Donaldson supervisory defendants were responsible for creating and maintaining a culture of violence without accountability at Donaldson and more generally in the northern region." (*Id.* ¶ 61). The "Donaldson supervisory defendants" include Christopher Gordy (Head Warden); Gwendolyn Givens (Head Warden and previously Assistant Warden); and Kenneth Peters (Assistant Warden). (*Id.* ¶¶ 11-13, 19). They also include Shannon Caldwell (Captain); Deaundra Johnson (Captain); and Mohammad Jenkins (Lieutenant), who together were largely responsible for reviewing use of force investigations at Donaldson in the years prior to October 2019. (*Id.* ¶¶ 14-17, 19). The final "Donaldson supervisory defendant" is

---

[1] I&I is now called the Law Enforcement Services Division. (Doc. # 60 ¶ 20 n.1).

Edward Ellington (ADOC Regional Coordinator), who had supervisory authority over correctional facilities in the northern region, which includes Donaldson. (*Id.* ¶¶ 18-19).

Next, Plaintiff claims that "[t]he I&I defendants are responsible for investigating serious use of force incidents and are directly responsible for the culture and environment that tolerates excessive force at Donaldson and elsewhere." (*Id.* ¶ 65). The "I&I supervisory defendants" include Arnaldo Mercado (Director of I&I); F.S. "Scott" Sides (Assistant Director of I&I); and Terry Loggins (I&I Supervisor), who was responsible for investigations in ADOC's northern region, which includes Donaldson. (*Id.* ¶¶ 20-23).

Finally, Plaintiff contends that the former ADOC Commissioner, Defendant Jefferson Dunn, "ha[d] had supervisory responsibility over ADOC since 2015, [was] aware of these systemic deficiencies, and [] failed and refused to act to correct them." (*Id.* ¶ 66).

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not satisfy Rule 8, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires a plaintiff to allege "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

When considering a motion to dismiss, "a court should 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (per curiam) (citations and internal quotation marks omitted). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the court determines that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the claims are due to be dismissed. *Id.* at 570.

## DISCUSSION

Plaintiff's Eighth Amendment claims fall into two categories: (1) direct excessive force claims against the Officer Defendants; and (2) supervisory liability claims against the remaining Defendants in this case. (Doc. # 60). Several Defendants filed motions to dismiss. (Docs. # 95; 97; 99; 100; 102; 104; 114).[2] Although there are seven different motions, the Defendants generally raise the same three arguments. First, they claim that Plaintiff's Complaint is a "shotgun

---

[2] Four of the six Officer Defendants filed motions to dismiss: Steven D. Harrison (Doc. # 97); Clifford O'Neal (Doc. # 99); Roderick Gadson (Doc. # 100); and Wilson B. Clemons (Doc. # 104). Six of the eleven Supervisor Defendants filed motions to dismiss: F.S. "Scott" Sides (Doc. # 95); Arnaldo Mercado (Doc. # 95); Jefferson Dunn (Doc. # 95); Edward Ellington (Doc. # 95); Shannon Caldwell (Doc. # 95); and Deaundra Johnson (Doc. # 114).

pleading."[3] (*Id.*). Next, they argue that the Complaint fails to state a claim under Rule 12(b)(6). (*Id.*). Finally, they assert qualified immunity. (*Id.*).

For the reasons explained below, the court finds that the Complaint is a shotgun pleading that must be amended for Plaintiff's claims to proceed. Of course, strictly speaking, ordering Plaintiff to amend her Complaint obviates the need to consider the other issues raised in the motions to dismiss. However, for the sake of promoting efficiency, narrowing the issues, and avoiding duplicative motions, the court addresses certain of Defendants' other arguments, as well.

**I.   The Complaint is a shotgun pleading because it fails to provide adequate notice of the specific basis for Plaintiff's claims against each individual Defendant.**

The term "shotgun pleading" is simply a shorthand expression describing a complaint that fails to comply with certain specificity requirements of the Federal Rules of Civil Procedure—particularly Rule 8 and Rule 10. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10 provides that:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence--and each defense other than a denial--must be stated in a separate count or defense.

Fed. R. Civ. P. 10(b). While there is no precise formula or checklist for what makes a pleading "shotgun," a complaint might earn this label if it: (a) includes multiple counts that each adopt the allegations of all preceding counts; (b) contains "conclusory, vague, and immaterial facts" unconnected a particular cause of action; (c) fails to divide different claims into separate counts; or (d) alleges "multiple claims against multiple defendants without specifying which of the

---

[3] Unless otherwise specified, "the Complaint" refers to Plaintiff's Amended Complaint (Doc. # 60), which is the operative pleading at this time.

defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1322-23.

"The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. At the end of the day, then, the key question is not whether a complaint fits into an identified category, but rather whether it includes enough information to allow a defendant and the court to "readily determine" if it states a plausible claim for relief. *See id.* at 1326.

Here, Plaintiff's Complaint consists of a single count that alleges Eighth Amendment violations by seventeen different defendants. (Doc. # 60). Within that solitary count, Plaintiff brings both direct excessive force claims and supervisory liability claims. (*Id.*). Although her claims are founded on distinctly separate events, Plaintiff fails to divide them into separate counts. (*Id.*). And, rather than identifying the specific basis for each Defendant's liability, she alleges "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *Weiland*, 792 F.3d at 1322-23. For example, Plaintiff claims that "the Donaldson supervisory defendants, the I&I supervisory defendants, and defendant Dunn encouraged excessive force by failing to investigate and hold accountable officers engaging in excessive force and by failing and refusing to act to correct systemic issues related thereto." (Doc. # 60 ¶ 69). But she does not identify any specific instances prior to October 2019 in which a particular Defendant failed to investigate misconduct or discipline wrongdoers.

Plaintiff's Complaint fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323. Therefore, to proceed with her claims in this matter, Plaintiff must file an amended complaint that complies with the requirements of Rule 8 and Rule 10. *See* Fed. R. Civ. P. 8(a)(2) & 10(b).

**II.     The Officer Defendants' motions to dismiss (Docs. # 97; 99; 100; 104) are due to be denied in part.**

In addition to arguing that the Complaint is a shotgun pleading, the Officer Defendants contend that (a) the Complaint fails to state a claim upon which relief can be granted, and (b) qualified immunity shields them from liability. (Docs. # 97; 99; 100; 104). For the reasons discussed below, both of these arguments are unpersuasive.

**A.     Plaintiff has plausibly alleged that the Officer Defendants used excessive force against Steven Davis in violation of the Eighth Amendment.**

The Eighth Amendment Cruel and Unusual Punishment Clause has been interpreted to prohibit the infliction of "unnecessary and wanton pain and suffering." *Whitley v. Albers*, 475 U.S. 312, 321 (1986). When an inmate claims that a prison official used excessive force, the "core judicial inquiry" is whether the official applied force "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (citing *Whitley*, 475 U.S. at 320-21). When determining whether prison officials used force maliciously and sadistically to cause harm, courts evaluate: (a) "the need for the application of force"; (b) "the relationship between that need and the amount of force used"; (c) "the threat reasonably perceived by the responsible officials"; and (d) "any efforts made to temper the severity of a forceful response." *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting *Hudson*, 503 U.S. at 7); *Whitley*, 475 U.S. at 321.

Beating an unarmed and compliant inmate without justification constitutes excessive force. *See Hudson*, 503 U.S. at 10; *Skrtich*, 280 F.3d at 1302-03. In *Hudson*, the Supreme Court held that prison officials used excessive force when they punched and kicked a handcuffed inmate in the mouth, eyes, chest, and stomach. 503 U.S. at 4, 10. Likewise, in *Skrtich*, the Eleventh Circuit found an Eighth Amendment violation when correctional officers continued to punch, kick, and beat a prisoner who was already incapacitated by electric shock. 280 F.3d at 1302-03.

In this case, Plaintiff has plausibly alleged that the Officer Defendants violated the Eighth Amendment by using excessive force against Steven Davis at Donaldson Correctional Facility on October 4, 2019. (Doc. # 60 ¶¶ 26-43). Accepting Plaintiff's non-conclusory allegations as true, when the Officer Defendants intervened in the altercation between Davis and another inmate, Davis immediately dropped his weapons and submitted to the officers. (*Id.* ¶ 35). Despite Davis's purported compliance, Plaintiff alleges that the Officer Defendants repeatedly struck Davis in the face and head, causing multiple fractures. (*Id.* ¶¶ 36-43). Plaintiff contends each Officer Defendant personally used force against Davis by stomping on his head, and at least one officer struck Davis on the head with a baton. (*Id.* ¶¶ 27-38). Plaintiff also alleges that none of the Officer Defendants attempted to intervene to stop the further use of force against Davis. (*Id.* ¶ 39). After being airlifted to the hospital as a level I trauma patient, Davis died as a result of the blows to his head. (*Id.* ¶ 40). These allegations are sufficient to state a claim for relief under the Eighth Amendment because a reasonable jury could conclude on these facts that the Officer Defendants maliciously and sadistically used force against Steven Davis for the purpose of causing him harm. *See Hudson*, 503 U.S. at 6-7; *Whitley*, 475 U.S. at 321; *Skrtich*, 280 F.3d at 1300.

**B.     The Officer Defendants are not entitled to qualified immunity at this stage.**

Qualified immunity shields government officials from liability for civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To be eligible for qualified immunity, an officer must first establish that he was acting within his discretionary authority when the alleged misconduct occurred. *See, e.g., Richmond v. Badia*, 47 F.4th 1172, 1179 (11th Cir. 2022).

An officer acts within his discretionary authority when his behavior is "(1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Harbert Int'l,*

9

*Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998); *Est. of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018). An officer may still act within his discretionary authority even when violating the Constitution. *See Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017); *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). The relevant question is "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Harbert*, 157 F.3d at 1282 (citations and internal quotations omitted).

If the officer shows he was acting within his discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate by showing that (1) the officer violated a constitutional right; and (2) that right was clearly established at the time. *See, e.g.*, *Richmond*, 47 F.4th at 1179. Courts have discretion to decide which of these questions should be addressed first in light of the circumstances of a particular case. *See Pearson*, 555 U.S. at 236.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). There are three ways a right may be clearly established for qualified immunity purposes:

> (1) case law with indistinguishable facts clearly establishing the constitutional right, (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right, or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

*Crocker v. Beatty*, 886 F.3d 1132, 1137 (11th Cir. 2018) (citing *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291-92 (11th Cir. 2009)). In the Eleventh Circuit, "only Supreme Court cases, Eleventh Circuit caselaw, and [state] Supreme Court caselaw can 'clearly establish' law." *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003).

"In this Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically

10

to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*." *Skrtich*, 280 F.3d at 1301. Moreover, Eleventh Circuit precedent clearly establishes that "government officials may not use gratuitous force against a prisoner who has been already subdued or . . . incapacitated." *Id.* at 1303. And, "[i]t is not necessary that a police officer actually participate in the use of excessive force in order to be held liable under section 1983. Rather, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Id.* at 1302 (quoting *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1441-42 (11th Cir. 1985)).

As explained above, Plaintiff has sufficiently alleged that the Officer Defendants violated clearly established law when they repeatedly struck Steven Davis in the face and head despite Davis's compliance and failed to intervene to prevent the continued use of excessive force against Davis. Therefore, the Officer Defendants are not entitled to qualified immunity at this stage.

### III. The Supervisor Defendants' motions to dismiss (Docs. # 95; 102; 114) are due to be granted in part.

The Supervisor Defendants likewise argue that Plaintiff fails to state a plausible Eighth Amendment claim against them. (Docs. # 95; 102; 114). Because the court agrees that Plaintiff's allegations against the Supervisor Defendants do not state a plausible claim for relief based on supervisory liability, the motions are due to be granted in part. However, to the extent the motions seek dismissal with prejudice, they are due to be denied because the court will allow Plaintiff one more opportunity to amend her Complaint.[4]

---

[4] One Defendant, Shannon Caldwell, also argues that Plaintiff's claims against the Supervisor Defendants are barred by the statute of limitations because Plaintiff's Amended Complaint, which first added the Supervisor Defendants, was untimely filed. (Doc. # 102 at 2). Defendant Caldwell contends that the statute of limitations imposed an October 4, 2021 deadline, but Plaintiff did not file the Amended Complaint until October 15, 2021. (Doc. # 103 at 20). Even assuming, without deciding, that Defendant Caldwell's proposed deadline is correct, and that Plaintiff's claims against the Supervisor Defendants do not relate back to the original Complaint, the court finds that this argument is unpersuasive.

"It is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (citation and quotation omitted). To establish § 1983 liability, a plaintiff "must instead allege that the supervisor, through his own actions, violated the Constitution." *Ingram v. Kubik*, 30 F.4th 1241, 1254 (11th Cir. 2022); *Hartley*, 193 F.3d at 1269. Therefore, when a supervisor did not personally participate in the alleged constitutional violation, the plaintiff must demonstrate a causal connection between the supervisor's actions or inactions and the alleged misconduct. *Iqbal*, 556 U.S. at 676; *Ingram*, 30 F.4th at 1254; *Hartley*, 193 F.3d at 1269. This is an "extremely rigorous" standard. *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 957 (11th Cir. 2019).

A plaintiff can establish the required causal connection by showing that "a history of widespread abuse put[] the responsible supervisor on notice of the need to correct the alleged deprivation, and he fail[ed] to do so." *Hartley*, 193 F.3d at 1269 (citation and quotation omitted). Under this approach, "[t]he deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." *Id.* (citation and quotation omitted). Alternatively, "[a] supervisor can be held liable for implementing or failing to implement a policy that causes his subordinates to believe that they can permissibly violate another's constitutional rights if the subordinates then do so based on that belief." *Ingram*, 30 F.4th at 1256.

"Either way, though, to prove that a policy or its absence caused a constitutional harm, a plaintiff must point to multiple incidents, or multiple reports of prior misconduct by a particular

---

The record shows that Plaintiff filed a motion seeking leave to file an amended complaint on September 16, 2021, well within the two-year statute of limitations. (Doc. # 58). Plaintiff even submitted a copy of the proposed Amended Complaint as an exhibit. (Doc. # 58-1). However, the court did not grant Plaintiff's motion until October 15, 2021 (Doc. # 59), and Plaintiff filed the Amended Complaint that very same day. (Doc. # 60). The court will not penalize Plaintiff for its own delay. These circumstances show that Plaintiff's claims against the Supervisor Defendants are not barred by the statute of limitations.

employee." *Piazza*, 923 F.3d at 957 (internal citations omitted); *see Ingram*, 30 F.4th at 1254. "And allegations of a single incident of unconstitutional conduct cannot state a claim for supervisory liability, even when the conduct involves several subordinates." *Ingram*, 30 F.4th at 1254.

Here, Plaintiff's Complaint does not state a claim for supervisory liability under § 1983 because Plaintiff fails to identify a specific factual basis for supervisory liability for each individual Supervisor Defendant. Indeed, as noted above, Plaintiff's Complaint consists of a single count that brings Eighth Amendment excessive force claims against seventeen different Defendants. (Doc. # 60). Pointing to the DOJ Report, Plaintiff makes generalized allegations that Alabama correctional officers frequently use excessive force against inmates and that supervisory officials routinely fail to investigate these incidents and hold the subordinate officers accountable. (*Id.*). However, she does not identify any specific behavior by any particular Defendant, but rather claims that "[t]he Donaldson supervisory defendants were responsible for creating and maintaining a culture of violence without accountability at Donaldson," and "[t]he I&I defendants are responsible for investigating serious uses of force incidents and are directly responsible for the culture and environment that tolerates excessive force at Donaldson and elsewhere." (*Id.* ¶¶ 61, 65). These allegations are insufficient to state a claim for supervisory liability under § 1983. *See Ingram*, 30 F.4th at 1254; *Hartley*, 193 F.3d at 1269.

Therefore, to proceed with her claims against the Supervisor Defendants, Plaintiff must amend her Complaint to adequately state a claim against them. If Plaintiff does pursue claims against any such officer, she must allege facts that show that officer is liable.

## CONCLUSION

For the reasons discussed above, the motions to dismiss are due to be granted in part and denied in part.

Because all of the motions (Docs. # 95; 97; 99; 100; 102; 104; 114) claim that the Complaint is an impermissible shotgun pleading, they are due to be granted in part. Additionally, the Supervisor Defendants' motions to dismiss are due to be granted in part because Plaintiff has failed to state a claim against them. Nevertheless, Plaintiff may file an amended complaint that complies with Rules 8 and 10 and that plausibly and separately states a claim for relief against each Defendant named therein.

To the extent that the Supervisor Defendants' motions (Docs. # 95; 102; 114) request dismissal with prejudice, they are due to be denied. Additionally, insofar as the Officer Defendants' motions (Docs. # 97; 99; 100; 104) seek dismissal for failure to state a claim and qualified immunity, they are due to be denied. An order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this February 22, 2023.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE