# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | |
|---|---|
| **SONDRA RAY, as the personal representative of the estate of her son, Steven Davis,** | ) ) ) ) |
| **Plaintiff,** | ) ) |
| | ) **CASE NO.: 2:20-cv-00499-RDP-GMB** |
| **v.** | ) ) |
| **RODERICK GADSON, *et. al.*,** | ) ) ) |
| | ) ) |
| **Defendants.** | ) |

## JOINT REPORT AND STIPULATION REGARDING PROTECTIVE ORDER

The parties and ADOC jointly file this report and stipulation in response to the Court's order regarding the dispute over the scope and terms of the protective order being sought by ADOC and the Defendants (Docs. 175 & 179).

## I.   PLAINTIFF'S POSITION

### A.   Introduction

The ADOC parties' request for a broad protective order is an unprecedented attempt to force plaintiff and her attorney to litigate this case in a secrecy bubble. The undersigned has litigated numerous excessive force cases in this district, including high profile cases. No public official or entity has ever sought to keep documents related to the incident at issue or the investigation of the incident, let

alone the information learned from the investigation documents, confidential.

Plaintiff has conferred with counsel for the ADOC parties. Plaintiff has no objection to a protective order addressing concrete security or privacy concerns. Plaintiff does object to the protective order sought by the ADOC parties, which would effectively preclude plaintiff or her counsel from using the documents **or any fact learned from them** to speak the truth about what happened to Steven Davis or the ADOC cover-up **to anyone forever**. Plaintiff cannot even discuss what she learns with friends or family members who have been supporting her through this entire ordeal.

The ADOC parties accuse plaintiff of intending to "litigate this lawsuit in the public media." This is an unfair accusation. Plaintiff has no intention of attempting to litigate the case in the media. Plaintiff has merely refused to agree to the broad protective order proposed by defendants that would effectively be a gag order. Plaintiff would note that she is in possession of recorded inmate statements containing heart-breaking descriptions of the murder of Steven Davis. Plaintiff has not released these recordings. Plaintiff has made no decision whether or when she will publicly release them or any other documents or information she receives that is not under a protective order.

Plaintiff understands why the ADOC parties want to gag her. They did something terrible and want as few people as possible to know about it. They want

their public narrative from an October 5, 2019 press release–that Davis got what he deserved–to stand unrebutted.

Plaintiff has been an advocate for better treatment of prison inmates. From plaintiff's perspective, if plaintiff is not gagged by this Court and chooses to speak publicly regarding the murder of her son and the ADOC cover-up using the information in the investigative files, that is not litigating a case in the media. Rather, it is advocacy regarding an important matter of public concern–the abuse of Alabama inmates  by corrections officers–and a mother trying to do what she can to make it a little less likely that other men will meet the same fate as her son.

If Davis were alive to tell the tale, he could speak about what happened. His mother stands in his shoes and has been limited in her ability to speak for her son because she does not have his knowledge. To a large extent, by discovering the contents of the investigative file, she is obtaining the knowledge her son cannot share because he is dead. Muzzling the mother of Davis with a protective order is no different than muzzling a living victim from speaking, something no court would do (except maybe in extreme circumstances not present here).

As explained below, the ADOC parties' request for a protective order, in light of all the circumstances, falls far short of good cause under Rule 26(c). Chief among the reasons the ADOC parties have not met their burden is that ADOC publicized its version of events immediately after Davis' death.

## B.    The ADOC Press Release

ADOC issued the following press release regarding Steven Davis' death:

BIRMINGHAM, Ala. – Law enforcement agents of the Alabama Department of Corrections Investigations and Intelligence Division are investigating the death of an inmate that occurred on October 5.

At approximately 10:35 a.m., inmate Steven Davis, 35, of Graysville, was pronounced dead at a local hospital on October 5. Davis was incarcerated at the William E. Donaldson Correctional Facility in Bessemer serving a 20-year sentence out of Jefferson County for murder.

On the morning of October 4, two Donaldson correctional officers say inmate Davis rushed out of his cell brandishing one prison-made weapon in each hand and attempted to strike an officer.

After repeated verbal commands and the use of standard methods to disarm the inmate, Davis refused to comply. At that time, correctional officers applied physical measures to diffuse the threat in order to remove the weapons from the scene and secure the inmate.

Davis was taken to the infirmary and subsequently airlifted to a local hospital for further treatment.

This investigation is ongoing and additional information will be provided at the conclusion.

[https://doc.alabama.gov/NewsRelease?article=ADOC+Investigates+Inmate%E2%80%99s+Death+at+Donaldson+Correctional+Facility]

## C.    The Documents at Issue

The parties have agreed that certain documents in the files either are or are not confidential or highly confidential. Plaintiff understands the following documents remain in dispute:

$      Autopsy photos
$      Statements prepared by ADOC employees on October 4, 2019
$      Statements prepared by inmates on October 4, 2019
$      Post assignment roster for October 4, 2019
$      Gadson disciplinary history
$      Photos of Davis taken immediately after the incident
$      Investigative report 19-1481, the initial death investigation
$      19-1481 death investigation checklist
$      19-1481witness list
$      Recorded interviews and transcripts of the same for 19-1481
$      19-1481scene photographs
$      Documents related to evidence collection and analysis for 19-1481, including photographs of the evidence, the evidence log sheet, and ADFS documentation regarding evidence submission and analysis (mostly in the evidence inventory and DFS folders)
$      An anonymous letter (with enclosure) regarding the death of Davis
$      Investigative report for the internal affairs excessive force review of the incident, 19-1481A
$      Recorded interviews and transcripts of the same for 19-1481A

## D.     Alabama's Public Records Law, and ADOC's Historical Practices Regarding Investigative Files

As a preliminary matter, plaintiff would note that, while federal law controls the scope of discovery and the application of any privilege in this federal-question case, some of the records the ADOC parties seek to protect are public records they have no interest in protecting. Because the investigations are closed, autopsy photographs are public records. Ala. Code § 36-18-2. The undersigned has subpoenaed autopsy photographs numerous times without any objection. Likewise, the post assignment roster, Gadson's disciplinary history, the photographs of Davis immediately after the incident, and the routine statements prepared by ADOC

employees and inmates before the arrival of ADOC investigators are public records because they are records of the regular business of ADOC. *See Stone v. Consol. Pub. Co.*, 404 So. 2d 678, 681 (Ala. 1981) ("We have carefully considered the issue raised by appellants on this appeal, particularly with reference to our statutes. Construing these statutes in pari materia, we hold that the "public writing" spoken of in Code 1975, § 36-12-40, is such a record as is reasonably necessary to record the business and activities required to be done or carried on by a public officer so that the status and condition of such business and activities can be known by our citizens.").

Though the ADOC investigatory report and related investigatory materials are not considered public records, even they are subject to disclosure under Alabama law if a person shows "undue hardship." *Allen v. Barksdale*, 32 So. 3d 1264, 1271-72 (Ala. 2009). There can be no doubt that many of the records plaintiff seeks would be subject to disclosure (without a protective order) under Alabama law. At a minimum plaintiff cannot duplicate the recorded statements of inmate James Sales, who is now deceased, and plaintiff cannot take photographs of the scene (or of Davis) or gather and test forensic evidence. Plaintiff would likely be entitled to other inmate statements as well. *See Ex parte Alabama Dep't of Mental Health & Mental Retardation*, 840 So. 2d 863, 869 (Ala. 2002) ("Undue hardship might include, among other things, the unavailability of a witness whose statement cannot be obtained from another source; the lack of access to patients who had given

statements to the BSI investigators or the impossibility of obtaining the equivalent of those statements from patients because of a patient's physical or mental deterioration; the refusal of patients or hospital staff to make a statement to Lambert for fear of reprisal by the hospital; or the refusal of patients or staff members or even former staff members to speak to Lambert out of fear of self-incrimination.).

The status of the records under Alabama law may be one reason, historically, ADOC has produced I&I files without a protective order. In the undersigned's prior ADOC cases, ADOC has produced I&I files and other documents for the incident at issue without a protective order. Most recently, in *Koty Williams v. Akeem Edmonds*, in which the undersigned represented a living excessive force victim, ADOC produced requested records without a protective order except for "personnel records, certain administrative regulations, and diagrams of prison facilities." [No. 7:20-cv-00497-LSC (Doc. 24)] Thus, the ADOC parties' original motion recognizes the limited classes of documents ordinarily protected in this type of litigation: "Examples of documents historically designated as 'confidential' or 'highly confidential' include schematics and blueprints, restricted policies and procedures." [Doc. 170-1 / ¶2]

**E.     The ADOC Parties Have Not Met Their Burden Because, among Other Reasons, They Publicly Accused Davis of Attacking an Officer and Historically Produced Investigative Files Without a Protective Order, and Plaintiff's Substantial Independent Knowledge (From Inmate Interviews and Public Records) Means Any Protective Order Would Seriously Impair Plaintiff's First Amendment Right to Speak and Her**

**Ability to Investigate this Case.**

The Eleventh Circuit has summarized the applicable law as follows:

> "Good cause" is a well established legal phrase. Although difficult to define in absolute terms, it generally signifies a sound basis or legitimate need to take judicial action. In a different context, this court has identified four factors for ascertaining the existence of good cause which include: "[1] the severity and the likelihood of the perceived harm; [2] the precision with which the order is drawn; [3] the availability of a less onerous alternative; and [4] the duration of the order." *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193, 1205 (11th Cir. 1985). In addition, this circuit has superimposed a "balancing of interests" approach to Rule 26(c). *See Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir.1985).

*In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987). A party must show a "distinct concrete harm." *In re: Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1251 (11th Cir. 2020). "[T]he party seeking the protective order must show good cause by demonstrating a particular need for protection" because "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Trinos v. Quality Staffing Servs. Corp.*, 250 F.R.D. 696, 698 (S.D. Fla. 2008) (citing *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)).[1]

"[C]ourts have been especially unwilling to issue a protective order merely to spare the defendant embarrassment where a defendant is a public official and the

---

[1] *Cipollone* has been favorably cited by the Eleventh Circuit. *See In re Alexander Grant*, 820 F.2d at 355-56.

issues in the case are matters of public concern." *Garcia v. Chapman*, No. 12-21891-CIV, 2013 WL 12061867, at *9 (S.D. Fla. Oct. 22, 2013) (citing *Flaherty v. Seroussi*, 209 F.R.D. 295, 299 (N.D.N.Y. 2001)), *report and recommendation adopted*, No. 12-21891-CIV, 2013 WL 12061868 (S.D. Fla. Nov. 15, 2013)). There can be no doubt that this case involves matters of public concern.

Given that ADOC publicized its version of events, the ADOC parties do not come to this Court with clean hands. They had the freedom to put their narrative into the public sphere but now want to prevent plaintiff from being able to respond to that narrative with documents or facts from the investigation even though they promised to provide "additional information" regarding it.

Any protective order like the one proposed by the ADOC parties would, in effect, be a gag order that would chill the speech of plaintiff and her counsel. Plaintiff already has substantial independent knowledge regarding the incident and the cover-up. Plaintiff independently knows the identities of witnesses. Plaintiff has recorded statements from some of the same inmate witnesses whose statements are part of the investigative files. Plaintiff has public records regarding the incident.

A plaintiff cannot be prohibited from speaking about what she knows independently from her own investigation or public records. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984). Under the protective order sought by the ADOC parties, however, because it would protect not just the documents themselves

but also any fact plaintiff learns from them, plaintiff is subject to being accused and hauled into court and forced to prove that she has independent knowledge if she speaks at all regarding the investigation. The only safe course for plaintiff and her counsel is to not speak.

In considering a request for a protective order, "great care must be taken to avoid [the] unnecessary infringement" of a party's trial preparation. *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985). The protective order sought by the ADOC parties would impair plaintiff's ability to investigate the case. If not prohibited from doing so, plaintiff would expect to use the documents and information from the investigative files in interviews of non-party witnesses (inmates). Under the proposed protective order, the undersigned would be hamstrung in speaking with witnesses, in trying to refresh recollections or challenge a witness who is saying something the undersigned believes is incorrect or intentionally false, all while at risk of being accused of violating the protective order if a fact learned from the files (as opposed to plaintiff's independent investigation or a public record) is inadvertently or mistakenly revealed.

Embarrassment related to the incident at issue is not the type of embarrassment from which a party is entitled to be protected. *See McDowell v. Byers Eng'g Co.*, No. 1:04-CV-3685-WBH-AJB, 2006 WL 8431962, at *1–2 (N.D. Ga. Feb. 22, 2006). In *McDowell*, the district court considered a plaintiff's request to

seal her deposition testimony concerning certain emails sent at work that were of a sexual nature. The court rejected the plaintiff's request, stating that "[p]laintiff's allegations of potential harassment and opprobrium are general and speculative." *Id.* at *2 (citing *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978) (requiring "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements")).

The court noted that "release of information not intended by the writer to be for public consumption will almost always have some tendency to embarrass." *Id.* (quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986)). Thus, "an applicant for a protective order whose chief concern is embarrassment must demonstrate that the embarrassment will be particularly serious." *Id.* (citing *Cipollone*). In rejecting "[p]laintiff's speculative and general claim" of embarrassment, the court noted the plaintiff "[did] not address how or why the communications are more embarrassing than the conduct which they describe" and that the questions were relevant to the defendant's unclean hands defense and were not "for purposes of embarrassment or ridicule." *Id.*

Here, as in *McDowell*, it is the conduct that is embarrassing.

To the extent the ADOC parties are claiming a concern about pretrial publicity that could taint a jury pool, right now any juror who does a Google search is going to see ADOC's version. Moreover, because this case is in the early stages, without

a trial setting, and is not the subject of intense media interest or scrutiny, a protective order is not appropriate. *See D.L. v. Slattery*, No. 10-61902-CIV, 2011 WL 1303167, at *5-*6 (S.D. Fla. Mar. 31, 2011) (in rejecting an effort to gag counsel for SPLC from making statements critical of the privatization of services provided by Florida's Department of Juvenile Justice, the court noted that the case was in its early stages and stated, among other things: "Although the extrajudicial statements at issue are undoubtedly archived indefinitely in an online digital format, as are most news stories and press releases in this digital age, Defendants have not made a sufficient showing that the statements remain in active circulation, or have prejudiced or continue to prejudice the community against Defendants, creating a reasonable likelihood that Defendants cannot receive a fair trial. To the extent Defendants fear that potential jurors can recall past statements at will electronically, such concerns are more appropriately addressed at the time of trial, which is still months away. *See Stroble v. California*, 343 U.S. 181, 195 (1952) (finding no showing of jury prejudice where most of the extensive pretrial publicity occurred six weeks before trial, and defendant otherwise made no affirmative showing of prejudice in the community); *cf. R.J. Reynolds Tobacco Co. v. Engle*, 750 So.2d 781 (Fla. Dist. Ct. App.2000) (affirming order restraining parties and counsel from making extrajudicial statements during class action jury trial).").

Morever, there are legitimate uses of the information in the investigative file,

uses that go to the core of the First Amendment, that do not necessarily involve publicly countering the ADOC narrative, including the investigatory uses noted above and advocacy with the Jefferson County DA and federal officials to reopen the criminal case.

### F.    The Law Enforcement Investigatory Privilege Does Not Support the ADOC Parties' Arguments.

The ADOC parties rely upon the law enforcement investigatory privilege. This is a privilege against production and has no application here, as the ADOC parties do not oppose production. In any event, while courts in this circuit have found that the privilege exists and can theoretically apply to closed law enforcement investigations, *Fed. Election Comm'n v. Rivera*, 335 F.R.D. 541, 549 & n.8 (S.D. Fla. 2020), both of the investigations were conducted by ADOC, which does not enforce any laws, not by the State Bureau of Investigation or any other part of ALEA. The contents of a routine prison death investigation and an internal affairs excessive force investigation simply do not raise the interference concerns that underlie the law enforcement investigatory privilege. *See JTR Enterprises, LLC v. An Unknown Quantity of Colombian Emeralds, Amethysts & Quartz Crystals*, 297 F.R.D. 522, 528-29 (S.D. Fla. 2013) (discussing history and purposes of the privilege and ordering party to produce communications with law enforcement agency).

Even if the privilege could apply to these files, the privilege is a qualified privilege that requires a balancing of interests and commonly considers the ten

factors in *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa.1973). *See Rivera*, 335 F.R.D. at 549; *Dep't of Texas Veterans of Foreign Wars of United States v. Dorning*, No. CV 07-S-2144-NE, 2008 WL 11379930, at *2 (N.D. Ala. Nov. 10, 2008). The interests of ADOC in this case are minimal, if they exist at all, as the investigations are closed, there is no confidential informant (only witnesses independently known to plaintiff), and no special law enforcement techniques were used, just interviewing fact witnesses, photographing the scene, and collecting and testing evidence. *See Rivera*, 335 F.R.D. at 548 ("Many of the concerns typically underlying law enforcement privilege claims are inapplicable here. There is no confidential informant whose identity must be protected. There are no confidential law enforcement strategies which would be revealed if Rivera had access to the ROIs. The 'technique' involved here -- interviewing fact witnesses and writing a report summarizing what the witness said -- is hardly confidential (and is not unique to law enforcement, in any event). This is a civil enforcement proceeding, not a criminal investigation or prosecution, and the investigation has been completed.").

Simply put, the ADOC parties are attempting to use a privilege against production they are not asserting to bolster their efforts to prevent plaintiff from speaking.

### G.     The Reasons Ordinarily Used to Justify a Broad Protective Order Do Not Apply Here.

Generally, the Eleventh Circuit's endorsement of broad protective orders has

been in cases in which a party consents for the purpose of facilitating  voluminous discovery in a complex case and a media organization seeks access to discovery materials. *See McCarthy v. Barnett Bank of Polk Cnty.*, 876 F.2d 89, 91-92 (11th Cir. 1989); *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356-57 (11th Cir. 1987) ("We conclude that in complex litigation where document-by-document review of discovery materials would be unpracticable, and when the parties consent to an umbrella order restricting access to sensitive information in order to encourage maximum participation in the discovery process, conserve judicial resources and prevent the abuses of annoyance, oppression and embarrassment, a district court may find good cause and issue a protective order pursuant to Rule 26(c)."); *see also United States v. Anderson*, 799 F.2d 1438, 1442 (11th Cir. 1986) (newspaper sought access to documents filed under seal in an ongoing criminal prosecution). The Eleventh Circuit has not endorsed broad protective orders in cases involving discrete incidents of misconduct by public officials or matters of public concern. *See In re Sec'y, Fla. Dept. of Corrs.*, No. 20-10650-J, 2020 WL 1933170, at *1 (11th Cir. Mar. 30, 2020) (prison officials only sought to protect "a small subset" of sensitive prison safety and security information from being disclosed to current prison inmates).

Here, there is no media organization trying to intervene, just a plaintiff trying to avoid being gagged. The case involves public officials and matters of public

concern. Plaintiff has not consented to confidentiality in order to get broad discovery. To the contrary, plaintiff's case against the officers is not complex, and the documents at issue are not voluminous and do not contain sensitive information.

Plaintiff is aware of only one lower court decision in this circuit approving of confidentiality protection for evidence (a video recording) directly related to an incident involving a public official. That case, *Pettaway v. Barber*, No. 2:19-CV-8-JTA, 2021 WL 11423059, at *6 (M.D. Ala. Apr. 14, 2021), is distinguishable. First, the *Pettaway* plaintiff agreed to receive the video and other documents pursuant to a confidentiality order. Second, and most importantly, the City had not already publicized its version of events. To the contrary, the court was concerned about defendants' names being "dragged through the metaphorical mud" before trial. *Id.* at *6 (quoting *Looney v. Moore*, No. 2:13-CV-00733-KOB, 2014 WL 1364509, at *1-2 (N.D. Ala. Apr. 7, 2014)). Here, ADOC has already dragged Steven Davis' name through the mud and labeled him as an inmate who tried to kill a corrections officer. They have no standing to cripple plaintiff's ability to publicly or privately respond, if she chooses to do so. Additionally, in *Pettaway*, there was no substantial independent investigation by the plaintiff and no interference with the plaintiff's trial preparation. Plaintiff also believes the case was wrongly decided, as the magistrate judge does not appear to give any consideration to the nature of the litigation and treats the case as if it is purely between private parties with no public import.

## H.     Conclusion

The ADOC parties publicly labeled Steven Davis as a prison inmate who got what he deserved and swept the murder under the rug. The ADOC parties now seek the Court's assistance in making sure it stays there. For the reasons stated above, the Court should deny the ADOC parties' request that the listed documents be treated as confidential

## II.     DEFENDANTS AND ADOC'S POSITION

### A.     Background

Even though supervisory defendants have motions to dismiss pending before the Court, Plaintiff sought leave at the pleadings stage to obtain documents from ADOC about the incident and involved officers to "facilitate the timely completion of discovery and allow for a more productive discussion at the [new] parties planning meeting." (Doc. 134 at ¶ 5). The parties worked through defense objections to the scope of discovery being sought (Docs. 136–137, 140, & 161), the subpoena was served on ADOC, (Doc. 170-2), and ADOC responded.

ADOC and the Defendants filed a motion for protective order to cover documents ADOC intended to produce which was consistent with orders previously used in these types of cases and supported by good cause. (Doc. 170). Plaintiff objected contending that certain documents should not be covered by the protective order, namely: (1) incident reports (of the incident) and public records under

Alabama law (Doc. 174 at 2–3 ¶ 1); (2) Steven Davis' own records (*Id.* at 3 ¶ 1); (3) training materials (*Id.* at 5 ¶ 9); (4) Steven Davis' medical and institutional files (*Id.* at 6 ¶ 10); (5) investigation material relating to the death of Steven Davis (*Id.* at 6 ¶ 11); and (6) other investigation files which are not at issue (*Id.* at 7 ¶ 14).[2] [3]   Notably, Plaintiff's goal appears to be far beyond her initial request to seek documents to facilitate discovery, and she now appears to seek documents to litigate in the public media based on discovery obtained in this case. (E.g., Doc. 174 ¶¶ 3–4, 8–9). Specifically, she states, "Plaintiff does oppose being ordered to keep what she learns about the death of her son secret so ADOC can protect itself from potential embarrassment." (*Id* at ¶ 8).  And, "[w]hile the public has no right to demand access to discovery materials, a litigant, absent a protective order, is free to disseminate them." (*Id*. at ¶ 3).

**B. Court Ordered Response**

In response to the Court's order, the parties and ADOC conferenced on multiple occasions, exchanged documents, and discussed respective positions in good faith efforts to resolve the dispute over the scope and terms of the protective order.  Further, subject to an "Attorneys' Eyes Only" agreement between Plaintiff

---

[2] None of the documents in category 6 are being sought given that motions to dismiss are pending for the supervisory defendants.

[3] Plaintiff agreed blueprints, restricted regulations, personal information, and protected health information of others (except Steven Davis) are subject to the confidentiality provisions contained in the proposed protective order. (Doc. 174 ¶ 7).

and ADOC, ADOC produced a copy of responsive documents to Plaintiff for review to facilitate productive discussion regarding the need for confidentiality of certain documents. The discussion below addresses the categories outlined in the Court's order. (Doc. 175).

1.  **Each Category of documents to be produced, with a general description of the documents**

Attached hereto as Exhibit A is a chart prepared by Defendants and ADOC categorizing the documents to be produced by the subpoena number and whether the Defendants and ADOC deems the documents as "highly confidential," "confidential," or "not confidential." In an effort to resolve and narrow the dispute, Defendants and ADOC have agreed that more than 40 responsive documents, including portions of responsive investigative files, would be outside the scope of the confidentiality designations in the proposed protective order. Defendants and ADOC maintain that certain responsive documents, as described in Exhibit A, require a confidentiality designation under the proposed protective order.

The Defendants and ADOC contend that good cause exists for the Court to enter the proposed protective order setting forth a two-tier system for identifying confidential and protected documents to facilitate discovery and to protect the documents currently identified as "highly confidential" and "confidential" because these documents involve confidential, private, sensitive security information as to the operations and security of ADOC facilities, the I&I investigatory process (and

future investigations), to protect the fair administration of this proceeding, and for other grounds under Rule 26(c) including annoyance, embarrassment, oppression, and undue burden and expense.

> ## 2.    The asserted reasons why documents are confidential, including "good cause protection." FED. R. CIV. P. 26(c)

Rule 26 (c) provides that "the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense," including protecting confidential information and limiting the scope and disclosure or discovery of certain matters. FED. R. CIV. P. 26(c)(1)(A), (D), (G); *Seattle Times Co. v. Rinehart*, 467 U.S. 20, 34 (1984) ("The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders); *Farnsworth v. Procter & Gamble Co*., 758 F.2d 1545, 1547 (11th Cir. 1985) ("Rule 26(c) gives the court discretionary power to fashion a protective order.") "The prerequisite is a showing of 'good cause' made by the party seeking protection." *Chicago Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001). This standard requires the district court to balance the party's interest in obtaining access against the other party's interest in keeping the information confidential.[4] *Id. (citing Farnsworth, supra.); see also,*

---

[4] Plaintiff's position ignores that under the proposed protective order, she will have access to all of the documents, which are the subject of this dispute, for use in litigating this case. Her position reveals her intent to litigate the case in public before there has been any determination as to the extensive allegations she lodges in this lawsuit. (Doc. 127).

*Seattle Times Co. v. Rhinehart*, 467 U.S. at 37 (holding that a protective order entered on a showing of good cause which is limited to the context of pretrial civil discovery and does not restrict the dissemination of information if gained from other sources does not offend the First Amendment.).

### 3.   The legal authority supporting the contention

At this stage, the substance of the dispute revolves around Plaintiff's contention that the I&I investigation and reports, recorded interviews, transcripts, statements, photographs, autopsy photographs, and other documentation are not confidential and can be used by her (and presumably her counsel) and disseminated publicly about her views or what she learns through discovery without any regard to the fair administration of justice, the prejudice that will cause the other parties, or to these proceedings. (See Exhibit A – Confidential document as to scope of dispute).[5]

In *Dorsett v. County of Nassau*, Judge Tomlinson for the Eastern District of New York, addressed a dispute involving a plaintiff – who obtained a 700-page police internal investigation report through discovery in a § 1983 wrongful death lawsuit –and then scheduled a press conference to publicly disseminate the report. 762 F. Supp. 2d 500 (E.D.N.Y. 2011) *aff'd,* 800 F. Supp. 2d 453 (E.D.N.Y. 2011), *aff'd sub nom. Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156 (2d Cir. 2013). In a

---

[5] There have been several instances of this matter garnering public attention, both nationally and locally and in social media posts.

thorough a well-reasoned decision, Judge Tomlinson determined that the law enforcement privilege applied to the report (even though the defendant has already been convicted) and issued a protective order restricting access to the report to the parties in the case, and use in the specific litigation. *Id*. at 521525. The court in *Dorsett* noted that:

> "the law enforcement privilege encompasses: (1) information pertaining to law enforcement techniques and procedures; (2) information that undermines the confidentiality of sources; (3) information that would endanger witnesses and law enforcement personnel; (4) information that would undermine the privacy of individuals involved in an investigation; or (5) information that would seriously impair the ability of law enforcement agencies to conduct future investigations."

*Id*. at 520 (quoting *In re City of New York*, 607 F.3d 923, 944-45 (2d Cir. 2010). Much like the internal affairs report in *Dorsett*, the I&I investigation file includes the identities of many witnesses, inmates, and law enforcement alike. The investigative file also contains techniques and procedures that I&I uses when investigating use of force incidents within ADOC. Despite Plaintiff's contentions to the contrary, public dissemination of the identity of inmate informants and law enforcement witnesses would clearly have an effect on the willingness of similarly situated witnesses to come forward in the future. Likewise, public dissemination of I&I internal investigative techniques could jeopardize their ability to conduct efficient and complete investigations in the future.

In *Dorsett*, the court determined that the internal investigation report was not a judicial document, there was no presumption of access and the balance of the interests weighed in favor of satisfying a baseline showing of "good cause" for a protective order restricting access to the parties in the litigation. *Id*. at 525. District Courts in the Eleventh Circuit have similarly applied this logic to investigative documents. *See Dep't of Tx. Veterans of Foreign Wars of U.S. v. Dorning*, No. 07-S-2144-NE, 2008 WL 11379930, at *4-5 (N.D. Ala. Nov. 10, 2008) (applying the law enforcement privilege to information that would disclose the identity of informants or law enforcement techniques or procedures); *Hickey v. Columbus Consol. Gov't*, No. 4:07-CV-096, 2008 WL 450561 (M.D. Ga. Feb. 15, 2008). Here, Defendants and ADOC do not intend to prevent *disclosure of these documents to Plaintiff* in response to her subpoena but, instead, wish to prevent *public* disclosure of documents not otherwise available to the public. Defendants and ADOC believe that these limitations on Plaintiff's use of documents responsive to her subpoena is not only reasonable but prudent.

Similarly, in this case the I&I investigation is not a judicial document but rather part of the discovery being conducted at this stage of the proceedings, and the I&I investigation, which is not a public record under Alabama law, is only available to Plaintiff in light of this pending lawsuit and through her subpoena. ALA. CODE § 12-21-3.1 ("Law enforcement investigative reports and related investigative

material are not public records. Law enforcement investigative reports, records, field notes, witness statements, and other investigative writings or recordings are privileged communications protected from disclosure."); *Allen v. Barksdale*, 32 So. 3d 1264, 1271 (Ala. 2009) ("Section 12–21–3.1(b) clearly exempts law-enforcement investigative reports and related material from public disclosure."); *c. f. Something Extra Publ'g, Inc. v. Mack*, 350 So. 3d 663, 664, and n.7 (Ala. 2021) (finding it unnecessary to decide whether 12-21-3.1(b) applied only to pending criminal investigations).[6] Plaintiff's reliance on *Stone v. Consol. Pub. Co*., 404 So. 2d 678, 681 (Ala. 1981) is misguided because the court in *Stone* only address the disclosure of public information. *Something Extra* addressed  the broad reach of  privileged investigatory materials.  350 So.3d at 667.

Furthermore, in *Seattle Times Co. v. Rinehart*, 467 U.S. 20 (1984), the United States Supreme Court specifically addressed the right of a party to disseminate, in advance of trial, information gained through the pretrial discovery process. *Id*. at 22. In upholding the protective order, the Supreme Court noted that "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required," and that the "trial court is in the best

---

[6] Senate Bill 202 was introduced on February 9, 2022 in the Alabama 2022 Regular Session. The proposed bill seeks to amend Alabama Code § 12-21-3.1 to provide that law enforcement investigations shall become public records after a criminal matter is disposed. The bill is currently in the beginning stages of the legislative process and does not have a foreseeable enactment date. S. 202, 2022 Leg. Reg. Sess. (Ala. 2022).

position to weigh fairly the competing needs and interest of the parties affected by discovery." *Id*. at 36.

In that case, the defendant, who had been sued for defamation and invasion of privacy, planned to continue publishing articles about the plaintiff and to use information gained through the discovery process. *Id*. at 25. The trial court entered a protective order prohibiting the defendant from "publishing, dissemination, or using [the protected information] in any way except where necessary to prepare for and try the case." *Id*. at 27.

As noted in the Supreme Court's opinion, a litigant does not have "an unrestrained right to disseminate information that has been obtained through pretrial discovery." *Id*. 31. "Thus, continued court control over the discovered information does not raise the same specter of government censorship that such control might suggest in other situations. *Id*. at 32. "A protective order, like the one in *Seattle Times*, prevents a party from disseminating only that information obtained through the use of the discovery process," and it does not extend to restricting the dissemination of information if it is "gained through means independent of the court's process."[7] *Id*. at 34.

---

[7] Plaintiff concedes she has substantial independent knowledge including recorded statements from some of the inmates who were interviewed during the investigation.

Significantly, "pretrial depositions and interrogatories are not public components of a civil trial." *Id*. "[I]n general, they are conducted in private as a matter of modern practice [and] [m]uch of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action." *Id*. "Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." *Id*. Furthermore, the Supreme Court emphasized:

> It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties. The Rules do not distinguish between public and private information. Nor do they apply only to parties to the litigation, as relevant information in the hands of third parties may be subject to discovery.
>
> There is an opportunity, therefore, for litigants to obtain—incidentally or purposefully—information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes. . . . As stated by Judge Friendly in *International Products Corp. v. Koons*, 325 F.2d 403, 407–408 (CA2 1963), "[w]hether or not the Rule itself authorizes [a particular protective order] ... we have no question as to the court's jurisdiction to do this under the inherent 'equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices'" The prevention of the abuse that can attend the coerced production of information under a State's discovery rule is sufficient justification for the authorization of protective orders.

*Id*. at 35-36 (other internal citations omitted).

The United States Supreme Court's concerns are equally recognized and enforced in the Eleventh Circuit Court of Appeals, the Northern District of Alabama, and the Middle District of Alabama. *E.g. United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) (explaining that [d]iscovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation. That is why parties regularly agree, and courts often order, that discovery material remain private. If it were otherwise and discovery information and discovery orders were readily available to the public and press, the consequences to the smooth functioning of the discovery process would be severe."); *Looney v. Moore*, No. 2:13-CV-00733-KOB, 2014 WL 1364509, at *1-2 (N.D. Ala. Apr. 7, 2014) (finding good cause for a protective order limiting the use of discovery material to the litigation only in the interest of justice and out of concern of tainting the jury pool by releasing sensitive information and documents before a determination of wrongdoing); *Pettaway v. Barber*, No. 2:19-cv-9-JTA, 2021 WL 11423059 at at *5 (M.D. Ala. Apr. 14, 2021) (denying plaintiff's motion to remove confidential designations and rejecting the plaintiff's argument that the public has a right to know and understand the ongoing litigation as missing the mark because the public does not have a right to discovery material).

In particular Judge Adams opinion in *Pettaway*, answers Plaintiff's argument and position made in this case.

> Plaintiff does not allege any hardship posed by the City's confidential designations, nor any benefit to be gained by him should the relief sought be granted. Indeed, Plaintiff has received the videos and recordings without any redactions or alterations through discovery. Without attribution to authority or context explaining his need to remove the confidential designations, Plaintiff argues the public's right to know and understand ongoing litigation as grounds for the removal of the designation. (Doc. No. 132 at ¶ 12.) This argument however misses the mark as the public does not have a right to the discovery material at this time. Plaintiff appears to be confusing the common law right of access with the private process of discovery.

> Courts "must be mindful that the purpose of discovery is 'to facilitate orderly preparation for trial, not to educate or titillate the public." *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982). The Court is troubled that Plaintiff is attempting to try this case in the informal court of public opinion, rather than in the courtroom. However, as stated eloquently by the court in *Looney*, "[i]n the interest of justice, [the Court] is committed to giving both parties a fair trial, which includes protecting the [City and individual defendants] from the 'annoyance, embarrassment, [and] oppression' that could occur from allowing their names to be dragged through the metaphorical mud before a jury has even made any determination of wrongdoing." *Looney*, 2014 WL 1364509, at *2. Accordingly, good cause exists to maintain the confidential designations of the recordings and videos.

> *Id.* at *5-6.

Lastly, Plaintiff will not suffer any hardship or prejudice by a protective order protecting the I&I investigation as confidential and restricting its use for purposes of this case only as Judge Adams correctly observed in her analysis in *Pettaway.*[8]

### 4.      How each party proposed to resolve the dispute

The Defendants and ADOC have worked in good faith to narrow the dispute over the scope of the protective order. The Defendants and ADOC are also willing to have the proposed protective order modified to make clear that Plaintiff and the parties can use protected information for investigation and preparation for trial.

However, given the Plaintiffs position and telegraphing plans to use discovery for impermissible purposes to litigate this lawsuit in the public media[9] and undermine the fair administration of these proceedings, which Plaintiff initiated, the Defendants and ADOC request the Court to restrict discovery for use only in this case. This would extend to all discovery, whether specifically designated as confidential or not, including depositions and written discovery.[10]  In keeping with instructions from *Seattle Times*, this restriction would not apply to information gained through means independent of the court's discovery process.

---

[8] Plaintiff position statement indicates an interest in pursuing state or federal authorities to reopen a criminal investigation which will require another stay.

[9] ADOC's press release provided less information than the incident report or duty office report. The initial news reports of the incident far exceeded the initial press release and if armed with discovery, much of which may ultimately be not relevant or inadmissible at trial, there is even a greater danger to a fair proceeding.

[10] This restriction can be revisited once the parties reach the summary judgment stage.

Respectfully submitted,

/s/ Steven K. Herndon

STEVEN K. HERNDON
(ASB-0093-O74S)
Herndon Law PC
1430 I-85 Parkway, Suite 234
Montgomery, AL 36106
Telephone: (334) 386-3848
Facsimile:(334) 386-3852
steve@herndon.law

*Attorney for Defendant Gadson*

/s/ Terri Olive Tompkins

TERRI O. TOMPKINS
ALEXANDRA S. MONTGOMERY
Rosen Harwood, P.A.
2200 Jack Warner Parkway, Suite 200
Tuscaloosa, AL 35401
Telephone: (205) 344-5000
Facsimile:(205) 758-8358
ttompkins@rosenharwood.com
amontgomery@rosenharwood.com

*Attorneys for Defendants Harrison and Johnson*

/s/ William J. Cranford III.

William R. Lunsford
Matthew B. Reeves
William J. Cranford III
**BUTLER SNOW LLP**
200 West Side Square
Suite 100
Huntsville AL 35801

/s/ Richard R. Owens

RICHARD R. OWENS

Bodewell Legal Group
1286 Oak Grove Road, Suite 200
Birmingham, AL 35209
rhett@bodewell-law.com

*Attorney for Defendant O'Neil*

/s/ Philip G. Piggott

PHILIP G. PIGGOTT
Webster, Henry, Bradwell, Cohan, Speagle and Deshazo, P.C.
Two Perimeter Park South, Suite 445
East Birmingham, AL 35243
Telephone: (205) 986-4400
Facsimile: 205-380-3485
ppiggott@websterhenry.com

*Attorney for Defendant Clemons*

/s/ C. Richard Hill

C. RICHARD HILL, JR.
W. ALLEN SHEEHAN
Cappell & Howard, P.C. 150 South Perry Street Montgomery, AL 36102
Telephone: (334) 241-8043
Facsimile:     (334)     241-8243
rick.hill@chlaw.com
allen.sheenan@chlaw.com

Telephone: (256) 936-5650
Facsimile: (256) 936-5651
bill.lunsford@butlersnow.com
matt.reeves@butlersnow.com
will.cranford@butlersnow.com

*Attorneys for Defendants Dunn, Mercado, Sides, and Ellington*

/s/ *Blake E. Brookshire*

BLAKE E. BROOKSHIRE (ASB-2531-U69X)
Assistant Attorney General
**ALABAMA STATE PERSONNEL DEPARTMENT OF COUNSEL**
Folsom Administrative Building 64 North Union Street, Suite 316
Montgomery, Alabama 36130-1400
Telephone: (334) 353-0046
Facsimile: (334) 353-4481
blake.brookshire@personnel.alabama.gov

*Attorney for the Alabama Department of Corrections*

*Attorneys for Defendants Williams and Teague*

/s/ Robbie Alexander Hyde

ROBBIE ALEXANDER HYDE
Alexander Hyde LLC
2138 Moore's Mill Road Ste A
Auburn, AL 36830
robbie@alexanderhyde.com

*Attorney for Defendant Caldwell, Loggins, and Givens*

/s/ Henry F. Sherrod III

HENRY F. SHERROD III
Henry F. Sherrod III, P.C.
119 South Court Street Florence, AL 35630 hank@alcivilrights.com

*Attorney for Plaintiff*