UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SONDRA RAY, as the personal representative of the Estate of her son, Steven Davis, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 2:20-cv-499-RDP |
| RODERICK GADSON, *et al.*, | ) ) | |
| Defendants. | ) ) | |

## **REPORT AND RECOMMENDATION**

District Judge R. David Judge Proctor referred the Motion for Entry of Protective Order (Doc. 170) for a report and recommendation.   This motion and two related motions (Docs. 193 & 198) are now fully briefed and ripe for review.

## **I. BACKGROUND**

The Motion for Entry of Protective Order attached a proposed order (Doc. 170-1) but acknowledged that Plaintiff Sondra Ray did not agree to its terms. Doc. 170 at 2.   After Judge Proctor's referral and in response to the Magistrate Judge's order (Doc. 175), the parties filed a Joint Report and Stipulation, along with a list of the documents in dispute and their proposed confidentiality designations. Docs. 182 & 182-1.   The court then ordered non-party the Alabama Department of Corrections ("ADOC") to submit the documents for *in camera* review. Doc. 183.

The Magistrate Judge reviewed the proposed protective order, joint stipulation, and documents to be produced, and then set the dispute for an evidentiary hearing on September 28, 2023.   Following the hearing and at the court's direction, the parties submitted a joint motion attaching a revised proposed Protective Order. Docs. 198 & 198-1.   Separately, Defendant Roderick Gadson filed a motion to seal certain exhibits he introduced into evidence during the hearing. Doc. 193.

As a result, the following motions are now pending for recommendation: (1) the Motion for Entry of Protective Order (Doc. 170) filed by Defendants Jefferson Dunn, Edward Ellington, Scott Sides, Arnaldo Mercado, Deaundra Johnson, Shannon Caldwell, Wilson Clemons, Steven Harrison, Clifford O'Neal, Robert Williams, Gadson, Glenn Teague, and non-party ADOC; (2) the Motion to Seal (Doc. 193) filed by Gadson; and (3) the Joint Motion to Submit (Doc. 198) filed by all parties.   For the reasons to follow, the Magistrate Judge recommends that the district court grant in part the two motions relating to the Protective Order dispute (Docs. 170 & 198), enter the revised proposed Protective Order (Doc. 198-1), and deny the motion to seal. Doc. 193.

## II. DISCUSSION

### A.    The Protective Order Dispute

#### 1.    *Terms of the Protective Order*

The parties agree that the court should enter a Protective Order governing the

production of discovery materials in this case, and they have worked to narrow the areas of dispute over the terms of that order.   They have agreed, for example, to a two-tiered system allowing for "confidential" and "highly confidential" designations, and Ray does not challenge the designation of a diagram of the layout of Donaldson Correctional Facility in the higher tier. *See* Doc. 182-1.   Ray does challenge many designations in the lower tier, which will be addressed below.   At the outset, however, the court must resolve two broader disputes over the scope of the order: how it will restrict the parties' use of confidential documents and information to prosecute and defend Ray's claims, and how it will restrict the dissemination of those documents and information to the general public.

The right of the public to view discovery materials is not coextensive with the right of a litigant to receive those materials to prepare for trial.   "Discovery is neither a public process nor typically a matter of public record.   Historically, discovery materials were not available to the public or press." *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) (citations omitted).   "Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation. That is why parties regularly agree, and courts often order, that discovery information will remain private." *Id.* (citation omitted).   It is also for this reason that the "common-law right of access does not extend to information collected

through discovery which is not a matter of public record." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 355 (11th Cir. 1987).   Considering the core purpose of civil discovery, the court does not recommend that Ray or any other party have an unrestricted right to share confidential information learned during the discovery process in a public forum.

At any rate, Ray's counsel maintained during the evidentiary hearing that his primary complaint about the original proposed Protective Order is that it would interfere with his effective preparation for trial. Doc. 195 at 11.   The court agrees that this is a valid concern, but it is one that the revisions to the proposed order largely resolve by making clear that even documents designated as confidential can be used for trial preparation and other legitimate litigation purposes. *Compare* Doc. 170-1 at 4 (allowing disclosure to a witness only after he or she has been formally noticed for deposition or designated as a trial witness), *with* Doc. 198-1 at 4 (allowing disclosure to any prospective witness).

In deciding whether a party has satisfied Rule 26(c)'s requirement of good cause for entering any Protective Order, the court must "balance the party's interest in obtaining access against the other party's interest in keeping the information confidential." *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001).   Balancing the parties' interests here, the court notes that the revised Protective Order also resolves another one of Ray's chief complaints—that

the defendants will criticize her for using information she already knows through her own independent investigation just because that information also appears in a document that has been designated as confidential. *See* Doc. 182 at 2; Doc. 198-1 at 8 ("Nothing in this Order limits any person's ability to disclose information that the person demonstrably[1] knows independently or from public records.").

Finally, the revised Protective Order narrowly defines the scope of the information subject to confidentiality protections and does so in a way that is broadly consistent with Ray's own position. Specifically, the order allows a confidentiality designation if the document "contains any confidential, proprietary, personal, sensitive, or other private information," or implicates security interests in ADOC facilities. Doc. 198-1 at 1–2. Ray has repeatedly acknowledged the legitimacy of the defendants' and ADOC's security concerns and disclaimed any interest in private matters like protected health information. *E.g.*, Doc. 182 at 2 ("Plaintiff has no objection to a protective order addressing concrete security or privacy concerns."); Doc. 195 at 9 (agreeing that "if they make a legitimate case for legitimate concrete

---

[1] During the hearing, the court instructed the parties to meet and then either to submit a joint revised Protective Order or their opposing positions on the appropriate language for that order. Doc. 195 at 59–60. The parties did not interpret this as an instruction to negotiate the terms of the revised Protective Order, and instead submitted ADOC's and the defendants' revisions to the court in a joint filing. They did note in the joint motion that they disagree over the inclusion of the word "demonstrably" in this sentence. *See* Doc. 198 at 1. In the court's estimation, this word does not add much in the way of clarity other than to reinforce that the party who voluntarily discloses confidential information to the public accepts the burden of proving its independent knowledge of that information, which is the court's intent in recommending this provision.

security concerns or safety concerns, [then] the court has ample authority, regardless of privileges or this or that, to enter a protective order").

For these reasons, the second proposed Protective Order strikes an appropriate balance between Ray's interest in the disclosure of information relevant to her claims; the defendants' and ADOC's interests in safety, security, privacy, and protecting legitimately confidential information from public disclosure; and the public's interest in the disclosure of this information.   For this reason, the court finds good cause under Federal Rule of Civil Procedure 26(c) for entering the revised Protective Order filed as Document 198-1.

### 2.   *Specific Designations*

#### a.   **Investigative Materials**

Many of the challenged designations turn on the extent of the common-law law-enforcement privilege and its state analogue, which provides that "[l]aw enforcement investigative reports, records, field notes, witness statements, and other investigative writings or recordings are privileged communications protected from disclosure." Ala. Code. § 12-21-3.1(b).   Although the Eleventh Circuit has not explicitly recognized the law-enforcement privilege, many district courts within this circuit have done so, and Ray has not questioned its existence, only its application to the documents here.

Within the Northern District of Alabama, District Judge C. Lynwood Smith

has considered the interplay between the privilege and Alabama Code § 12-21-3.1. *See Dept. of Tex. Veterans of Foreign Wars v. Dorning*, 2008 WL 11379930 (N.D. Ala. Nov. 10, 2008).   In *Dorning*, Judge Smith observed that § 12-21-3.1(c) allows for production when the party seeking the documents "will suffer undue hardship and . . . the records, photographs or witnesses are unavailable from other reasonable sources." *Id.* at *4.   Because the *Dorning* plaintiff could show that he had been unsuccessful in obtaining the documents through all other discovery methods, Judge Smith found that this exception applied such that § 12-21-3.1 did not shield the documents in question from production. *Id.*   In turn, he found that the application of the law-enforcement privilege depended on ten factors, first articulated in *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973):

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case.

*Id.* at *2 (citing *Hickey v. Columbus Consol. Gov't*, 2008 WL 450561 (M.D. Ga. Feb.

15, 2008)).   Applying the *Frankenhauser* factors, Judge Smith determined that certain categories of documents were privileged from disclosure to the opposing party in his case. *Id.* at *4.

Adopting the framework from *Dorning*, this court finds on the current record that any documents contained within the investigative file of the Investigations and Intelligence Division ("I&I") qualify as non-public investigative reports under § 12-21-3.1.   Ray has admitted as much in briefing. Doc. 182 at 6 (stating that "the ADOC investigative report and related investigatory materials are not considered public records").   Section 12-21-3.1(c) allows the disclosure of these documents with a showing of undue hardship and unavailability from other sources, but this statutory exception is irrelevant when the alleged hardship is Ray's inability to prosecute her case effectively without the documents. *See* Doc. 182 at 6.   If ADOC were withholding production on this basis, not just requesting a confidentiality designation, perhaps this analysis would change.

Next, to the extent the *Frankenhauser* factors not only determine when to produce certain documents but also serve as guideposts for analyzing confidentiality designations, the court makes the following observations, which are illustrative and not an exhaustive recitation of the court's application of each factor to each piece of information in dispute.   As a threshold matter, a number of the factors apply with equal force to all of the I&I documents—for example, the court finds no basis for

8

concluding that Ray's lawsuit is frivolous, and the criminal investigation is closed even if Ray may advocate for it to be reopened.

As to categories 3, 4, 5, 6, 7, 8, 23, 24, and 25, each of these documents disclose the identities of witnesses to the incident in question such that their unrestricted disclosure could discourage future cooperation with law enforcement investigations and lead to retaliation against these particular witnesses.   Even Ray has acknowledged that witness retaliation is a legitimate concern in this case. Doc. 195 at 18–19.   Category 42 includes post assignments that could allow astute observers to exploit security risks, another valid concern Ray's counsel has acknowledged. Doc. 195 at 58 & 62.

Although the documents grouped in categories 9, 12, 13, 15, 16, 17, 19, 20, 21, and 22 consist of evidence developed during the I&I investigation, many are administrative in nature and have limited potential to lead to retaliation or to hinder future efforts to investigate crime if disclosed publicly.   Others are photographs of the interior of Donaldson Correctional Facility or of Ray's son's injuries.   ADOC has argued that any photographs of the interior of the prison create security concerns by disclosing information about the layout of the facility (Doc. 195 at 26–27), and that the injury photographs are so inflammatory that they will lead to retaliation against the defendants and taint the jury pool. Doc. 195 at 29.   The court finds that these are legitimate concerns justifying a confidentiality designation.   In summary

then, although the court cautions ADOC and the defendants against kneejerk confidentiality designations, the *Frankenhauser* factors support confidentiality protections for the I&I investigative documents at this stage in the proceedings.

Ray, of course, may choose to challenge these designations at a later date as circumstances change.   For example, Ray's counsel argues that certain of the documents in I&I's file, including some of the photographs, could have been supporting documents for the original incident report, making them public documents. Doc. 195 at 47; *see Allen v. Barksdale*, 32 So. 3d 1264, 1271 (Ala. 2009) (interpreting Alabama Code §§ 12-21-3.1 and 36-12-40).   ADOC disagrees and maintains that I&I prepared these documents during its investigation, which began on the same day as the incident. Doc. 195 at 47 & 52.   ADOC's counsel is an officer of the court, and the court accepts his factual representations at face value. *See* Fed. R. Civ. P. 11(b).   While Ray has offered only her counsel's speculation to this point, if she develops evidence tending to prove her theory about how these documents came into existence, she can challenge the designations at that time under the Protective Order's procedure for declassification. Doc. 198-1 at 5–6.

### b.    Anonymous Letter

ADOC has agreed to withdraw the confidentiality designation from the anonymous letter in category 10. Doc. 195 at 28.

### c.   Autopsy Photographs

Category 11 consists of photographs taken during Ray's son's autopsy.   The parties agree that the autopsy report is a public record under Alabama Code § 36-18-2 but disagree over whether the photographs supporting the report also qualify as public records.   Specifically, ADOC argues that the statute distinguishes between the autopsy report and supporting photographs throughout its provisions but makes only the report a public record. Doc. 195 at 51.   While the statute borders on complete indecipherability, ADOC's textual analysis is questionable.   Section 36-18-2, first adopted in 1935, does mention photographs on a number of occasions, but typically pairs them with "microphotographs" as a method for maintaining copies of autopsy reports after the original documents have been destroyed, presumably because of the expense of maintaining voluminous records before the advent of electronic storage.   There are two portions of the statute that list "records, documents, and photographs," indicating some distinction among these categories. However, nothing in the statutory text compels the conclusion that only records and documents (but not photographs) comprise the "original reports," which are what § 36-18-2 defines as public records.[2]

---

[2] To be technically correct, only the back-up copies of the original reports are public records under the statutory scheme. Ala. Code § 32-18-2 ("[T]he "photographed or microphotographed reproductions of original reports of all investigations . . . . shall be public records and shall be open to public inspection at all reasonable times."

This is as far into that morass as the court is willing to tread since there is ample reason to allow confidentiality designations of the autopsy photographs regardless of whether they fit within the scope of Alabama Code § 36-18-2.   As all parties agree, the autopsy photographs are gruesome.   The court cannot conceive of any legitimate purpose served by broadcasting them publicly at this stage in the proceedings.   On the other hand, if any party releases such inflammatory evidence to the public it would ratchet up the potential for retaliation against the defendants or other correctional officers and run the risk of tainting the jury pool.   For these reasons, the court finds that on balance the parties' interests weigh against the unrestricted disclosure of the autopsy photographs, establishing good cause under Rule 26(c) for a confidentiality designation.

## B.   Motion to Seal

Gadson's counsel moved a packet of materials (Doc. 192) into evidence during the evidentiary hearing.   Although he mentioned that the materials were intended for *in camera* review, he did not request that the court maintain them under seal. Doc. 195 at 60.   Counsel later filed the pending motion to seal (Doc. 193), but made no attempt to explain the basis for sealing the documents.   The court has reviewed the materials and they consist entirely of online news articles and social media posts related to this case or the events giving rise to Ray's claims.   Even Gadson's counsel admitted he obtained most of the documents in the exhibit by

performing a Google search on the internet. Doc. 195 at 60.   The court fails to understand why open-source news articles and public social media posts must be maintained under seal, and Gadson has not shown good cause for infringing on the public's common-law right of access to court records. *See Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007) (citing *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 839 (1978); *Chicago Tribune*, 263 F.3d at 1311).   For this reason, the motion to seal must be denied.

## III. CONCLUSION

Accordingly, the Magistrate Judge RECOMMENDS that:

1.    The Motion for Entry of Protective Order (Doc. 170) and the Joint Motion to Submit (Doc. 198) should be GRANTED in part and DENIED in part. Specifically, the Magistrate Judge recommends that the motions be GRANTED to the extent they seek (a) the entry of the proposed Protective Order filed as Document 198-1 and (b) the designation of the following categories of documents as "confidential" under the terms of that Protective Order: 3–9, 11–13, 15–17, 19–25, and 42.   These motions should be DENIED in all other respects.

2.    The Motion to Seal (Doc. 193) should be DENIED.

## IV. NOTICE OF RIGHT TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b)(2), any party may file specific written objections to this report and

recommendation within **14 days** from the date it is filed in the office of the Clerk. Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within 14 days from the date it is filed shall bar an aggrieved party from attacking the factual findings or legal conclusions on appeal except for plain error. 11th Cir. Rule 3-1.   Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.   A copy of the objections must be served upon all other parties to the action.

DONE and ORDERED on October 19, 2023.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE