UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **SONDRA RAY,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 2:20-cv-00499-RDP |
| } | |
| **RODERICK GADSON, et al.,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

This case is before the court on the four motions to dismiss filed by various Defendants. (Docs. # 146, 148, 171, 176). For the reasons discussed below, the motions are due to be granted in part and denied in part.

## BACKGROUND

Steven Davis was an inmate at Donaldson Correctional Facility ("Donaldson") who died after correctional officers struck him repeatedly in the face and head during an altercation at the facility on October 4, 2019. (Doc. # 127 ¶¶ 20-39). His mother, Plaintiff Sondra Ray, brings this action under 42 U.S.C. § 1983 on behalf of her son's estate. (*Id.* ¶ 1-2). She claims that (1) certain officers who were personally involved in the altercation violated her son's Eighth Amendment rights by using excessive force against him, and (2) supervisory officials who were involved in the incident and its aftermath, including those who permitted and encouraged the use of excessive force against Donaldson inmates, are also liable. (*Id.*). These named Defendants fall into different categories as detailed below.

### I. The Death of Steven Davis

Plaintiff's well-pleaded allegations make the following factual assertions. On October 4, 2019, when inmates at Donaldson were going outside for exercise, Steven Davis initiated a

physical altercation with another inmate who had been taunting him for several days. (Doc. # 127 ¶¶ 24-27). Davis attempted to use plastic "shanks" to attack the other inmate. (*Id.* ¶¶ 26-27). Several officers were present, and they intervened to stop the fight. (*Id.* ¶ 29). Those officers included Defendants Roderick Gadson, Steven D. Harrison, Clifford O'Neal, Wilson B. Clemons, Robert Williams, and Glenn Teague (the "Officer Defendants"). (*Id.*).

After the Officer Defendants intervened, Davis immediately dropped the shanks and submitted to the officers. (*Id.* ¶ 30). Even though Davis made no attempt to assault an officer, some of the Officer Defendants used force against him. (*Id.* ¶¶ 28, 31). They each "stomped" his head, and at least one officer struck Davis on the head with a baton. (*Id.* ¶¶ 32-33). None of the Officer Defendants intervened to stop the further use of force against Davis. (*Id.* ¶ 35).

Davis was taken to UAB Hospital where, according to medical records, he arrived "as a level I trauma [patient] via air following an assault in jail in which he was struck mainly in the face/head." (*Id.* ¶ 38). Head and maxillofacial CT scans showed multiple fractures and related bruising and bleeding. (*Id.* ¶ 39). Davis ultimately died as a result of his injuries. (*Id.* ¶ 36).

Excessive uses of force are initially reviewed by personnel at the relevant penal institution. (*Id.* ¶ 90). However, because Davis died as a result of his injuries, the Alabama Department of Corrections' ("ADOC") Investigation and Intelligence Division[1] ("I&I") was contacted about the incident. (*Id.* ¶ 40). I&I is the division within the ADOC responsible for investigating serious allegations of misconduct by ADOC officers. (*Id.*). However, Plaintiff contends that supervisors at both Donaldson and ADOC covered up Davis's death and failed to investigate the incident with even minimal effort. (*Id.* ¶ 45). Specifically, Defendants Loggins, Sides, and Mercado (the "I&I

---

[1] I&I is now called the Law Enforcement Services Division. (Doc. # 127 ¶ 15 n.1).

Supervisory Defendants")[2] allegedly used the knowledge and cooperation of Donaldson supervisory personnel (such as Defendants Givens, Caldwell, and Johnson (the "Donaldson Supervisory Defendants"))[3] to cover up the circumstances of Davis's death. (*Id.* ¶¶ 41-43). These Defendants were able to do so, according to Plaintiff, by coordinating the officers' stories, forcing some inmates to provide corroborating statements, and ignoring inmates who would provide incriminating statements. (*Id.* ¶ 44). As a result, no officer was disciplined. (*Id.* ¶ 51; Doc. # 85).

## II.     Conditions at Donaldson and ADOC

Plaintiff asserts that, historically, instances of excessive force happened often throughout ADOC because "I&I routinely functioned as a coverup department rather than as an accountability department." (Doc. # 127 ¶ 53). Allegedly, the I&I Supervisory Defendants directly and indirectly ensured I&I investigators knew "their job was to protect ADOC, not to help hold inmate abusers accountable." (*Id.* ¶ 74). Pointing to a Department of Justice Investigative Report released on July 23, 2020 (the "DOJ Report"), Plaintiff claims that the lack of discipline and investigation occurred not only with institution-level investigations but also was a component of I&I investigations. (*Id.* ¶ 75). Despite their alleged knowledge that inadequate, biased, and fraudulent I&I investigations were causing incidents of inmate abuse to go undisciplined and unsanctioned, the I&I Supervisory Defendants refused to take action. (*Id.* ¶ 72). Plaintiff further asserts that Jefferson Dunn (the ADOC Commissioner at the time of the incident) was aware of these systemic deficiencies but refused to correct them. (*Id.* ¶ 81).

---

[2] Defendants Terry Loggins (I&I Supervisor), F.S. "Scott" Sides (I&I Assistant Director), and Arnaldo Mercado (I&I Director) each served in supervisory roles at I&I at all relevant times. (Doc. # 127 ¶¶ 15-17). Accordingly, the court will refer to those three persons as "I&I Supervisory Defendants."

[3] Defendants Gwendolyn Givens (head warden for Donaldson), Shannon Caldwell (captain at Donaldson), and Deaundra Johnson (captain at Donaldson) each served in supervisory roles at Donaldson at all relevant times. (Doc. # 127 ¶¶ 11-13). Therefore, the court will refer to those three persons as "Donaldson Supervisory Defendants".

More broadly, Plaintiff alleges a pattern of excessive force without correctional officer accountability within the ADOC, specifically in Alabama's male prisons, including Donaldson. (*Id.* ¶ 84) (quoting the DOJ Report). These uses of force "include the use of batons, chemical spray, and physical altercations such as kicking" and "often result in serious injuries and, sometimes, death." (*Id.* ¶ 86) (quoting the DOJ Report). The DOJ Report noted that "the Department's review of a statistically significant set of ADOC's use of force incident reports and accompanying documentation from a six-month period demonstrated that a large number of reported uses of force [in 2017] were unjustified under the legal standard." (*Id.* ¶ 88).

As for the use of excessive force, the conditions at Donaldson -- including the use of force by correctional officers -- were the subject of a class action lawsuit that settled in 2011. (*Id.* ¶ 95). The terms of the settlement included certain investigation requirements for incidents of force and for these incidents to be referred to I&I. (*Id.* ¶ 96). However, Plaintiff contends that, by 2016, "officers' beatings of inmates in … Donaldson were routinely approved, without referral to I&I, as proper uses of force" by Donaldson personnel, including the Donaldson Supervisory Defendants. (*Id.* ¶¶ 99-102). As captains from 2016-2019, Plaintiff contends Defendants Johnson and Caldwell were responsible for investigating use of force incidents in the "Hot Bay" (a behavioral modification dorm in which Davis was housed prior to his death) while Defendant Givens reviewed the incidents. (*Id.* ¶¶ 106, 22-23). Plaintiff contends that Defendants Givens, Ellington, and Dunn discussed the issues regarding excessive force at Donaldson and deemed that the abuse was a "necessary evil due to the nature of the population at Donaldson and due to other limitations, including inadequate staffing and facility issues." (*Id.* ¶ 111). Despite this knowledge on the use of excessive force at Donaldson, Defendants Ellington and Dunn allegedly took no action to change or remedy these violations. (*Id.* ¶¶ 114-15).

Due to the alleged actions (and inactions) of the Donaldson Supervisory Defendants and Defendants Dunn and Ellington, Plaintiff alleges a pattern of excessive force at Donaldson for which officers were not held accountable. In support of her claims, Plaintiff purports to list sixteen incidents occurring between 2016 and 2019 where various inmates were allegedly abused in the Hot Bay at Donaldson. (*Id.* ¶ 116). Plaintiff also purports to list eleven additional incidents where "other inmates [were] assaulted by [Defendant] Gadson." (*Id.* ¶ 120). Plaintiff claims that the Donaldson Supervisory Defendants reviewed each of these incidents and subsequently approved them. (*Id.* ¶ 117).

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not satisfy Rule 8, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires a plaintiff to allege "enough fact[s] to

5

raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). In addition, "a court should 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (per curiam) (citations and internal quotation marks omitted). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the court determines that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the claims are due to be dismissed. *Id.* at 570.

## DISCUSSION

Plaintiff's Eighth Amendment claims fall into two categories: (1) direct excessive force claims against the Officer Defendants under Count I and (2) supervisory liability claims against the Supervisor Defendants under Counts II through V. (Doc. # 127). In response to Plaintiff's Second Amended Complaint ("Complaint"), the Supervisor Defendants filed motions to dismiss. (Docs. # 146, 148, 171, 176).[4] Although Defendants filed four different motions, they generally raise the same three arguments. First, they claim that Plaintiff's Complaint is a "shotgun pleading."

---

[4] All of the Supervisor Defendants filed motions to dismiss: Donaldson Captains Shannon Caldwell and Deaundra Johnson (Doc. # 146); the ADOC Officials Edward Ellington, Arnaldo Mercado, F.S. "Scott" Sides, and Jefferson Dunn (Doc. # 148); Investigation and Intelligence Supervisor Terry Loggins (Doc. # 171); and Donaldson Head Warden Gwendolyn Givens (Doc. # 176). Plaintiff responded to most of Defendants' motions to dismiss (Docs. # 159, 173) with the exception of the motion from Defendant Givens. However, none of the Officer Defendants filed motions to dismiss.

(Docs. # 146, 176). Second, they argue that the Complaint fails to state a claim under Rule 12(b)(6). (Docs. # 146, 148, 171, 176). Finally, they assert qualified immunity. (*Id.*).

**I.     Plaintiff's Complaint is Not a Shotgun Pleading.**

"A complaint that fails to comply with Rules 8 and 10 may be classified as a 'shotgun pleading.'" *Luft v. Citigroup Glob. Mkts. Realty Corp.*, 620 F. App'x 702, 704 (11th Cir. 2015); *See also Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10 provides that:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence--and each defense other than a denial--must be stated in a separate count or defense.

Fed. R. Civ. P. 10(b). While there is no precise formula as to what constitutes a "shotgun" pleading, a complaint falls within this category if it: (a) includes multiple counts that each adopt the allegations of all preceding counts; (b) contains "conclusory, vague, and immaterial facts" unconnected to a particular cause of action; (c) fails to divide different claims into separate counts; or (d) alleges "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1322-23.

"The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. The key question in deciding whether a pleading is deemed "shotgun" is not whether a complaint fits into an identified category, but rather whether it includes enough information to allow a defendant and the court to "readily determine" if it states a plausible claim for relief. *See id.* at 1326.

7

Even in the absence of a motion, a court faced with a shotgun pleading has the inherent authority to *sua sponte* demand repleader of such a complaint pursuant to Rule 12(e). *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1275 (11th Cir. 2006). Indeed, the Eleventh Circuit strongly encourages "a district court that receives a shotgun pleading [to] strike it and instruct counsel to replead the case – even if the other party does not move the court to strike the pleading." *Estate of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020).

Defendants Johnson and Caldwell (Doc. # 147) and Defendant Givens by incorporation (Doc. # 177) each assert that Plaintiff's Complaint is a shotgun pleading. They contend that Count Two, which implicates the Donaldson Supervisory Defendants, is comprised of only conclusory allegations and fails to distinguish between the alleged conduct of these three Defendants. The court disagrees.

Contrary to Defendants' argument, Plaintiff provides each defendant with "adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323. In her Complaint, Plaintiff alleges five separate counts of Eighth Amendment violations. (Doc. # 127). Count One makes a claim of direct excessive force by the Officer Defendants, while the remaining four counts assert claims of supervisory liability under § 1983 against the Supervisor Defendants. (*Id.*). Plaintiff specifically identifies the allegations against each defendant and articulates the factual basis behind each count. Count One alleges that the Officer Defendants, acting under color of law, "assaulted and battered Davis without justification, ultimately causing his death." (Doc. # 127 ¶ 136). Plaintiff claims in Count Two that the Donaldson Supervisory Defendants "encouraged excessive force by approving incidents of excessive force as within ADOC policy" and failed to hold officers accountable for uses of excessive force. (*Id.* ¶ 138). Count Three alleges that the I&I Supervisory Defendants "encouraged excessive force" by encouraging cover-ups for excessive force incidents while failing and refusing to correct systemic

issues of serious excessive force incidents despite requisite knowledge. (*Id.* ¶ 140). Count Four asserts Defendant Ellington "encouraged excessive force by failing to act, despite knowledge of a pattern of excessive force at Donaldson." (*Id.* ¶ 142). And, Plaintiff claims in Count Five that Defendant Dunn encouraged excessive force by both (1) failing to act despite knowledge of a pattern of excessive force at Donaldson, and (2) encouraging cover-ups for excessive force incidents while failing and refusing to correct systemic issues of serious excessive force incidents. (*Id.* ¶ 144-45).

Whatever else may be said about the allegations in Plaintiff's pleading, when paired with the factual allegations, the counts contained in the Complaint give ample notice to the Supervisor Defendants of the factual basis for Plaintiff's claims against them. *See Weiland*, 792 F.3d at 1323. Plaintiff alleges specific facts against each of the Defendants, including the Donaldson Supervisory Defendants, that directly correlate with the accusations included in each count. The Complaint as a whole is not "conclusory, vague, and immaterial" nor does it allege "multiple claims against multiple defendants without specifying which of the defendants are responsible" as the Donaldson Supervisory Defendants argue. *See Weiland*, 792 F.3d at 1326. Therefore, to the extent Defendants Johnson, Caldwell, and Givens seek dismissal based on this argument, the motions (Docs. # 146, 176) are due to be denied.

**II.     Plaintiff Has Plausibly Stated an Eighth Amendment Supervisory Liability Claim Against Some of the Supervisor Defendants.**

"It is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (citation and quotation omitted). Indeed, to establish § 1983 liability, a plaintiff "must instead allege that the supervisor, through his own actions, violated the Constitution." *Ingram v. Kubik*, 30 F.4th 1241, 1254 (11th Cir. 2022); *Hartley*, 193 F.3d at 1269. Therefore, when a supervisor did not personally participate

9

in the alleged constitutional violation, the plaintiff must demonstrate a causal connection between the supervisor's actions or inactions and the alleged misconduct. *Iqbal*, 556 U.S. at 676; *Ingram*, 30 F.4th at 1254; *Hartley*, 193 F.3d at 1269. This is an "extremely rigorous" standard. *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 957 (11th Cir. 2019).

A plaintiff can establish the required causal connection by showing that "a history of widespread abuse put[] the responsible supervisor on notice of the need to correct the alleged deprivation, and he fail[ed] to do so." *Hartley*, 193 F.3d at 1269 (citation and quotation omitted). Under this approach, "[t]he deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." *Id.* (citation and quotation omitted). Alternatively, "[a] supervisor can be held liable for implementing or failing to implement a policy that causes his subordinates to believe that they can permissibly violate another's constitutional rights if the subordinates then do so based on that belief." *Ingram*, 30 F.4th at 1256. Allegations of such behavior "would [also] provide the causal link between the challenged conduct and the ... policy, because [the officer] would have been acting in accordance with the policy of allowing or encouraging excessive force." *Id.* (quoting *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985)). "[T]o prove that a policy or its absence caused a constitutional harm, a plaintiff must point to multiple incidents, or multiple reports of prior misconduct by a particular employee." *Piazza*, 923 F.3d at 957 (internal citations omitted); *see Ingram*, 30 F.4th at 1254.

In other words, "[a] causal connection may be established when: 1) a 'history of widespread abuse' puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to

act unlawfully or knew that subordinates would act unlawfully and failed to stop them." *Mathews v. Crosby*, 480 F.2d 1265, 1270 (11th Cir. 2007).

The Supervisor Defendants argue that Plaintiff has not stated a plausible claim against them for excessive force under § 1983. In part, they contend that Plaintiff's Complaint should be dismissed for failing to plausibly claim that the Supervisor Defendants were directly involved in the altercation leading to Davis's death. However, Plaintiff does not allege, and there is no evidence, that any of the Supervisor Defendants were personally involved in the altercation that killed Davis. Thus, accepting Plaintiff's plausible factual allegations as true, the question is whether the non-conclusory allegations included in the Complaint "give rise to an entitlement to relief" based solely on supervisory liability. *Kivisto*, 413 F. App'x at 138. The court finds the allegations are sufficient to meet the standard at this stage of litigation.

  **A. Custom and Policy**

Plaintiff seems to allege two different causal connections to support her claims of supervisory liability: (1) a custom and policy established by the I&I Supervisory Defendants, and (2) a history of widespread abuse. Plaintiff's custom or policy argument fails for two reasons. First, Plaintiff relies on the DOJ Report to argue that the I&I Supervisory Defendants established a custom or policy of covering up incidents of excessive use of force. Plaintiff cites the DOJ Report, stating, "[The beating death of Steven Davis] is part of a pattern of excessive force without accountability, as the [DOJ] concluded" (Doc. # 127 ¶ 84) and "DOJ found that the problem was…also with I&I investigations" (*Id.* ¶ 75). However, as each of the Supervisor Defendants noted, the DOJ Report also states, "The [DOJ] does not serve as a tribunal authorized to make factual findings and legal conclusions binding on, or admissible in, any court." U.S. DEP'T OF

11

JUST., INVESTIGATION OF ALABAMA'S STATE PRISONS FOR MEN 1 (2023).[5] Thus, the DOJ Report cannot serve as the foundation of Plaintiff's allegations.

Second, Plaintiff relies on general, conclusory allegations about the ADOC to claim a custom or policy has been established within Donaldson. While Plaintiff alleges that the I&I Supervisory Defendants, in their respective roles, established a custom and policy for covering up instances of excessive force throughout the *ADOC*, Plaintiff has failed to specify how each of these Defendants established a custom or policy within *Donaldson* specifically. Instead, Plaintiff's allegations focus on how the I&I Supervisory Defendants' actions negatively affected the ADOC as a whole. The fact that Donaldson is within the ADOC does not *a fortiori* show how the I&I Supervisory Defendants implemented a policy that caused their Donaldson subordinates to believe they could "permissibly violate another's constitutional rights." *Ingram*, 30 F.4th at 1256. These allegations are insufficient to plead the creation or absence of a custom or policy within Donaldson.

### B.  History of Widespread Abuse

Despite the court finding that Plaintiff failed to sufficiently plead a custom or policy of indifference within Donaldson, Plaintiff has nevertheless sufficiently pled a causal connection based on an alternative theory: a "history of widespread abuse."

In her Complaint, Plaintiff alleges that the Donaldson Supervisory Defendants, along with Defendants Ellington and Dunn in their respective positions, ensured officers went undisciplined and officers were encouraged to use excessive force. Plaintiff claims that the Donaldson Supervisory Defendants, who were in their positions at all relevant times, routinely approved incidents of excessive force, failed to report incidents of force to I&I, and refused to take disciplinary action against officers who used excessive force. Defendants Ellington and Dunn,

---

[5] Because Plaintiff cited to the DOJ Report in her Complaint, the court construes the full text of the document as being "'incorporated into the amended complaint by reference' and is thus properly considered in deciding a Rule 12 motion." *Lewis v. Governor of Alabama*, 944 F.3d 1287, 1298 n. 7 (11th Cir. 2019).

according to Plaintiff, were aware of the uses of excessive force at Donaldson, failed to take action to change this practice, and failed to remedy the problems with excessive force. To support her assertion, Plaintiff includes fourteen incidents[6] of excessive force occurring between 2016 and 2019 involving named inmates and two incidents involving unnamed inmates who were placed in the Hot Bay at Donaldson. (Doc. # 127 ¶ 116). Taking Plaintiff's factual allegations as true, the court concludes that fourteen incidents in three years is sufficient to plead "obvious, flagrant, [and] rampant" abuse, especially when those incidents were purportedly brought to the attention of the supervisory officials in question. This is a much higher count than was involved in cases where no history of widespread abuse was found. *See Clark v. Evans*, 840 F.2d 876, 885 (11th Cir. 1988) ("[I]t is clear that four cases in four years would have been insufficient to put Evans on notice, especially since…such matters…would not have come to the attention of Evans."); *see also Hawk v. Klaetsch*, 522 F. App'x 733, 735 (11th Cir. 2013) ("We fail to see how three incidents over the span of nearly five years can constitute frequent, widespread, or rampant abuse."); *see also Garner v. Jamerson*, No. 23-10130, 2023 WL 4927250, at *3 (11th Cir. Aug. 2, 2023) (finding widespread abuse where the inmate suicide rate was double the national average and the supervisors failed to correct the abuse); *see also Sims v. Adams*, 537 F.2d 829 (5th Cir. 1976) ("We have also indicated…that a complaint alleging that a police supervisor has notice of past culpable conduct of his subordinates and has failed to prevent a recurrence of such misconduct states a [§] 1983 claim.").

Plaintiff also alleges multiple excessive force incidents over the course of a "continued duration" by officers within Donaldson that went undisciplined by the Donaldson Supervisory

---

[6] Each Defendant contends that the Complaint contains a different number of incidents. (Doc. # 147, p. 14) (Defendants Johnson and Caldwell view the Complaint as alleging 16 incidents); (Doc. # 149, p. 9) (The ADOC Defendants note there are 15 incidents alleged); (Doc. # 172, p. 9 n. 2) (stating simply that "Plaintiff lists incidents"); (Doc. # 177, p. 4) (incorporating Motion to Dismiss Doc. # 147). However, based on the court's reading of the Complaint, Plaintiff references a total of 23 incidents involving specifically named inmates, 14 occurring in the Hot Bay at Donaldson, and 11 involving only Defendant Gadson.

Defendants, including Defendants Ellington and Dunn. Accordingly, Plaintiff has pled a causal connection between the conduct of these Defendants and the excessive force used throughout Donaldson and against Davis. *See Hartley*, 193 F.3d at 1269.

Therefore, after careful review, the court concludes that Plaintiff has plausibly stated a claim of supervisory liability under § 1983 against the Donaldson Supervisory Defendants, Defendant Dunn, and Defendant Ellington. However, Plaintiff failed to plausibly state a claim of supervisory liability based on a custom or policy established by the I&I Supervisory Defendants. Accordingly, regarding the Rule 12(b)(6) argument, the motions to dismiss filed by the Donaldson Supervisory Defendants (Docs. # 146, 176) are due to be denied; the motion to dismiss filed by the ADOC Defendants (Doc. # 148) is due to be granted in part and denied in part; and the motion to dismiss filed by Defendant Loggins (Doc. # 171) is due to be granted.

### III. The Remaining Supervisor Defendants are Not Entitled to Qualified Immunity at this Stage.

Qualified immunity shields government officials from liability for civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "While the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be…raised and considered on a motion to dismiss." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). "Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *St. George*, 285 F.3d at 1337).

To be eligible for qualified immunity, a defendant must first establish that he was acting within his discretionary authority when the alleged misconduct occurred. *See, e.g., Richmond v. Badia*, 47 F.4th 1172, 1179 (11th Cir. 2022). When the plaintiff does not dispute the defendants

14

were operating within their discretionary authority (and that is the case here), "the burden shifts to the plaintiff to show that (1) the [defendants] violated a constitutional right and (2) the right was clearly established at the time of the alleged violation." *Piazza*, 923 F.3d at 951. Courts have discretion to decide which of these questions should be addressed first in light of the circumstances of a particular case. *See Pearson*, 555 U.S. at 236.

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). There are three ways a right may be clearly established for qualified immunity purposes:

> (1) case law with indistinguishable facts clearly establishing the constitutional right, (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right, or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

*Crocker v. Beatty*, 886 F.3d 1132, 1137 (11th Cir. 2018) (citing *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291-92 (11th Cir. 2009)). In the Eleventh Circuit, "only Supreme Court cases, Eleventh Circuit caselaw, and [state] Supreme Court caselaw can 'clearly establish' law." *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003).

Plaintiff has satisfied her burden to overcome qualified immunity at this, the pleading stage of the litigation. As previously mentioned, Plaintiff adequately pled a causal connection between the excessive force used against Davis and the widespread abuse in Donaldson that put the remaining Supervisor Defendants on notice. Moreover, the Eleventh Circuit has clearly established that a supervisory official, as the person "charged with directing the governance, discipline, and policy of the prison and enforcing its orders, rules, and regulations," would bear the liability of "fail[ing] to take reasonable steps in the face of a history of widespread abuse." *Mathews v. Crosby*, 480 F.3d 1265, 1275 (11th Cir. 2007); *see Fundiller v. City of Cooper*, 777 F.2d 1426, 1443 (11th Cir. 1985) (finding that the defendant could be liable for failing to take appropriate measures to

address prison safety given the pattern of excessive force engaged in by officers). Therefore, the remaining Supervisor Defendants are not entitled to qualified immunity at this stage, and to the extent the motions to dismiss are based on this argument, they are due to be denied.

## CONCLUSION

For the reasons discussed above, the motions to dismiss are due to be granted in part and denied in part. Because Plaintiff failed to plead a plausible claim of supervisory liability against the I&I Supervisory Defendants, the ADOC Motion to Dismiss (Doc. # 148) is due to be granted as to Defendants Sides and Mercado. Additionally, Defendant Loggins' Motion to Dismiss (Doc. # 171) is due to be granted for the same reason.

Plaintiff sufficiently pled a plausible claim of supervisory liability against the Donaldson Supervisory Defendants as well as Defendants Ellington and Dunn. Defendants have not established they are entitled to qualified immunity at this stage of the litigation. Therefore, the Johnson and Caldwell Motion to Dismiss (Doc. # 146) and Defendant Givens' Motion to Dismiss (Doc. # 177) are due to be denied. Similarly, the ADOC Motion to Dismiss (Doc. # 148) is due to be denied as to Defendants Dunn and Ellington.

An order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this November 2, 2023.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE